# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **KRISBER CASTRO and MARIO CASTRO,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 10-cv-7211(ER)(PED)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GREEN TREE SERVICING LLC, and** | ) | |
| **KEVIN SMITH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**Plaintiff Mario and Krisber Castro's
Memorandum in Support of their Motion for
Partial Summary Judgment against
Defendants Green Tree Servicing LLC and Kevin Smith**

**Respectfully Submitted,**

**Attorneys for Plaintiffs
Mario and Krisber Castro**

Brian L. Bromberg
Michael N. Litrownik
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906

Joseph M. Mauro
The Law Office of Joseph Mauro, LLC
306 McCall Ave.
West Islip, NY 11795
Tel: (631) 669-0921

Ronald Wilcox
The Law Office of Ronald Wilcox
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel: (408) 296-0**400**

## TABLE OF CONTENTS

Introduction …………………………………………………………………..…1

Statement of Facts……..……………………………………………………..…1

Legal Argument……………………………………………………………...4

I.      Summary judgment standard…………………….…………………………4

II.     The FDCPA……………………………………………………………………4

        A.  The FDCPA is a strict-liability statute and should be broadly construed to
            protect consumers………………………………………………………...5

        B.  The least sophisticated consumer…………………………………………...6

        C.  The Court should determine the legality of the collection letters……………7

III.    Defendants are debt collectors attempting to collect a debt………………………8

IV.     Plaintiffs are consumers; Defendants were trying to collect consumer debts…...11

V.      Defendants' phone messages violated the FDCPA…………………………...12

VI.     Green Tree's letter dated September 18, 2009 violated FDCPA § 1692g, and by
        extension, §§ -e, -e(2)(A), -e(5), -e(10), -f, and –f(1)…………………………...13

VII.    Defendants' "Privacy Notice" violated the FDCPA…………………………..…16

        A.  It is deceptive to misinform consumers about their legal rights……………..17

        B.  Defendants' letters to plaintiffs misinform them about their legal rights and
            threaten to do something legally prohibited……………………………………19

VIII.   Green Tree's letter dated October 28, 2009 violated FDCPA § 1692g, and by
        extension, §§ -e, -e(2)(A), -e(5), -e(10), -f, and –f(1)……………………………21

Conclusion…………………………………………………………………..22

**Introduction**

Plaintiffs are suing the Defendant debt collectors because the Defendants have harassed and abused the Plaintiffs in an attempt to collect a debt. Defendants' actions include telephoning the Plaintiffs over 550 times; threatening to take the Plaintiffs' house away from them; calling and speaking to the Plaintiffs' neighbors; threatening to call the Plaintiffs' relatives; failing to provide the Plaintiffs with any of the debt collection notices required by federal law; and using a robo-caller to persistently telephone the Plaintiffs' cellular phones.

Plaintiffs are moving for partial summary judgment relating to some of the Defendants' violations of the Fair Debt Collection Practices Act (FDCPA).[1]

**Statement of Facts**

On or about August 11, 2004, Krisber Castro executed a note (the "Note") in the principal amount of $83,000 to National Bank of Kansas, secured by a mortgage (the "Mortgage") on the home she owns with her husband, Mario. This was a second mortgage, because they were facing financial difficulties.

In spite of the breathing room the second mortgage bought them, in or about 2008, they fell behind on the mortgage payments and went into default. Countrywide Home Loans, and then BAC Home Loan Servicing, LP (a division of Bank of America), sent Krisber Castro letters warning that she was in default and threatening to take legal action.

Then, in or around August 2009, Bank of America warned that her "**account remains seriously delinquent**" and unless the total amount of $710.14 was paid, BAC would "proceed with collection action . . . ."

---

[1] 15 U.S.C. § 1692, *et seq.*

In or about August 2009, Green Tree undertook to collect the defaulted mortgage debt from the Castros. Sometime after September 18, 2009, Krisber received a letter from Green Tree, dated September 18, 2009. Green Tree purported to be collecting the mortgage on behalf of "Citizens Bank of Pennsylvania." In its letter dated September 18, 2009, Green Tree claimed that on September 1, 2009, it had taken over servicing the mortgage and advised Krisber that "AS OF THE DATE OF THIS LETTER, YOU OWE $81,263.47."

The Castros were shocked to receive a letter demanding payment of the full, accelerated amount of the Note and Mortgage. There was no way they could come up with anywhere near the sum of $81,263.47. But a mere three days later, on September 21, 2009, Green Tree sent Krisber a letter offering automatic payment services and advising that she would soon begin receiving her monthly mortgage statements from Green Tree.

At no time before demanding the $81,263.47 demanded in the letter dated September 18, 2009, did Green Tree accelerate the Note, even though this was required by the Mortgage. In other words, when Green Tree sent the letter demanding the full $81,263.47, the Castros only owed a month or two of mortgage payments amounting to roughly $1,000. This was confirmed when Green Tree sent Krisber a bill, dated September 26, 2009, in which Green Tree demanded only $1,704.02, and advised that "Past Due Payment[s]" totaled only $1,021.20. Accompanying the bill dated September 26, 2009, was a four-page form in which Green Tree advised that it would be sharing "personal information" about Krisber and her mortgage debt with various third-parties, many of whom are not authorized to learn about her debt or personal information from a debt collector like Green Tree.

Soon, however, things went from bad to worse. On or about October 28, 2009, Green Tree apparently decided to increase its pressure on the Castros by sending a letter entitled "90

Day Notice" warning that "YOU COULD LOSE YOUR HOME. PLEASE READ THE FOLLOWING NOTICE CAREFULLY." The 90 Day Notice goes on to advise that "As of 10/28/2009, your home is 73 days in default. Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home. You can cure this default by making the payment of $1,704.02 dollars by 01/29/2010." In the Notice, Green Tree also threatened that "If this matter is not resolved by 01/29/2010, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence.)"

Throughout this period, Krisber continued making monthly payments. Soon after she received the letter dated September 18, 2009, the Castros began receiving calls from a collector employed by Green Tree by the name of Kevin Smith. Kevin Smith was hired by Green Tree to collect debts. Even though the Castros were only slightly behind in their payments, Smith began a concerted effort to intimidate them into making payments in addition to their monthly payment. Smith would frequently call the Castros numerous times a day at their home phone and on their cell phones to demand payment. Green Tree and its collectors called them over 550 times.

In or about Spring 2010, Smith started calling the Castros' neighbors to have them tell the Castros to return Smith's calls. While engaging in these indirect communications, Smith wouldn't provide the Castros with notice that the communication was from a debt collector. Smith left messages for the Castros in which he threatened to continue calling the Castros' neighbors and relatives unless they returned his calls. In the numerous messages that Smith and his coworkers left, they failed to state that they were debt collectors.

At some point in 2010, Green Tree also began leaving multiple telephone messages using an automated machine. In these automated messages, Green Tree and its employees failed to identify the name of the company or that they were a debt collector.

3

## Argument

### I.        Summary judgment standard

Summary judgment is appropriate when "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"[2] "show[] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law."[3] A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome if the substantive law renders them so.[4] The movant bears the burden of demonstrating that no genuine issue exists as to any material fact.[5] The Court must draw all ambiguities and inferences in favor of the non-moving party.[6]  But to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts."[7] "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted."[8]

### II.       The FDCPA

Congress enacted the FDCPA "to eliminate abusive debt collection practices by debt collectors" and thereby to promote ethical business practices.[9] The FDCPA broadly prohibits

---

[2] Fed. R. Civ. P. 56(c)(1)(A).

[3] Fed. R. Civ. P. 56(a).

[4] *Andersen v. Liberty Liberty Lobby, Inc.*, 477 U.S. 242, 251-52, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[5] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[6] *See Andersen*, 477 U.S. at 255.

[7] *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

[8] *Andersen*, 477 U.S. at 249-50.

[9] S. Rep. No. 382, 95th Cong., 1st Sess. 1, *reprinted in* 1977 U.S.C.C.A.N. 1695, 1696 (1977). *See also* 15 U.S.C. § 1692(c) and (e).

unfair or unconscionable collection methods, conduct that harasses, oppresses or abuses any

debtor, and any false, deceptive or misleading statements made in connection with the collection

of a debt.[10] The FDCPA also requires that the debt collector provide the consumer with an initial

written communication containing a statement of the amount due, the name of the creditor, and a

statement of his or her rights under the FDPCA.[11] Moreover, in each communication with a

consumer, the debt collector must identify himself as a debt collector.[12]

By protecting consumers from abusive, deceptive and unfair collection practices, the

FDCPA insures that those debt collectors who refrain from using abusive debt collection

practices are not competitively disadvantaged.[13] And the FDCPA further insures that regardless

of whether a consumer owes a debt, he or she will be treated in a reasonable and civil manner.[14]

> ### A.   The FDCPA is a strict-liability statute and should be broadly construed to protect consumers

The Plaintiffs' claims relevant to this motion are all brought under the FDCPA.[15] The

FDCPA is a strict-liability statute.[16] To establish a violation of the FDCPA, the intent of the

Defendant is irrelevant.[17] The Plaintiff merely needs to show that the Defendant is a debt

collector who was collecting a debt when the FDCPA violation occurred. Proof of only one

violation is sufficient to support judgment for plaintiff.[18]

---

[10] 15 U.S.C. §§ 1692d, 1692e, and 1692f.

[11] 15 U.S.C. § 1692g.

[12] 15 U.S.C. § 1692e(11).

[13] 15 U.S.C. § 1692(e).

[14] *Baker v. G.C. Services Corporation*, 677 F.2d 775, 777 (9th Cir. 1982).

[15] 15 U.S.C. § 1692, *et seq*.

[16] *Larsen v. JBC Legal Group*, 533 F. Supp. 2d 290 (2008).

[17] *Russell v. Equifax ARS*, 74 F.3d 30, 33 (2nd Cir. 1997).

[18] *Bentley v. Great Lakes Collection Bureau, Inc.*, 6 F. 3d 60 (2d. Cir 1993).

Because the FDCPA is a strict-liability statute, there are no unimportant violations.[19]

Additionally, "[b]ecause it is designed to protect consumers, the FDCPA is, in general, liberally

construed in favor of consumers to effect its purpose."[20]  Proof of one violation is sufficient to

support recovery under the statute. [21]  The damage provision of the FDCPA provides for

statutory damages, and it is clear that a Plaintiff need not have suffered damages in order to

properly assert a claim.[22]

### B.        The least sophisticated consumer

In determining whether a communication from a debt collector violated the FDCPA,

courts in the Second Circuit view the communication from the perspective of the hypothetical

"least sophisticated consumer." In *Jacobson v. Healthcare Financial Services*[23] the Court stated:

> In this Circuit, the question of whether a communication complies
> with the FDCPA is determined from the perspective of the "least
> sophisticated consumer." *Clomon v. Jackson*, 988 F.2d 1314, 1318
> (2d Cir. 1993). The purpose of the least-sophisticated-consumer
> standard, here as in other areas of consumer law, is to ensure that
> the statute protects the gullible as well as the shrewd. *Id*. at 1318.

And the Second Circuit held in *Bentley v. Great Lakes Collection Bureau*[24] that this least

sophisticated consumer standard should be used to interpret claims made under 15 U.S.C. §

1692e:

> The FDCPA prohibits the use of "any false, deceptive, or
> misleading representation or means in connection with the

---

[19] *Id*. at 63.

[20] *Blair v. Sherman Acqui*sition, No. 04 Civ 4718, 2004 WL 2870080 at 2 (N.D. Ill. Dec.13,
2004) as quoted in *Foti v. NCO Financial Systems*, 424 F. Supp. 2d. 655 (S.D.N.Y. 2006);
*Villari v. Performance Capital Mgmt*., 1998 U.S. Dist. LEXIS 11128, 5-6 (S.D.N.Y. July 21,
1998) ("The FDCPA is remedial in nature and should be liberally construed. *Pipiles v. Credit
Bureau of Lockport, Inc.*, 886 F.2d 22, 27 (2d Cir. 1989).

[21] *See* 15 U.S.C. § 1692k; *Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993).

[22] *Jacobson v. Healthcare Fin. Servs.*, 516 F.3d 85, 96 (2d Cir. 2008).

[23] 516 F.3d 85, 90 (2d Cir. 2008).

[24] 6 F.3d 60 (2d Cir. 1993).

6

collection of any debt." 15 U.S.C. § 1692e (1988). We apply an objective test based on the understanding of the "least sophisticated consumer" in determining whether a collection letter violates section 1692e. *Clomon v. Jackson, 988 F.2d 1314, 1318 (2d Cir. 1993)*. The sixteen subsections of section 1692e provide a nonexhaustive list of practices that fall within the statute's ban. These practices include "the threat to take any action that cannot legally be taken or that is not intended to be taken." 15 U.S.C. § 1692e(5) (emphasis added). A debt collection practice may violate the FDCPA even if it does not fall within any of the subsections, *Clomon*, 988 F.2d at 1318, and a single violation of section 1692e is sufficient to establish civil liability under the FDCPA, see 15 U.S.C. § 1692k.[25]

### C.       The Court should determine the legality of the collection letters

Because the law requires debt collection letters to be viewed from the perspective of the least sophisticated consumer, the Court may determine the legality of a letter as a matter of law. As the Court observed in the Eastern District of New York case of *Leone v. Ashwood Fin., Inc.*:

> The Second Circuit has indicated that because the least sophisticated consumer standard is objective, a determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law. *Berger v. Surburban Credit Corp.*, No. 04CV4006, 2006 U.S. Dist. LEXIS 62909, 2006 WL 2570915, at *3 (E.D.N.Y. Sept. 5, 2006) (citing *Schweizer v. Trans. Union Corp.*, 136 F.3d 233, 237-38 (2d Cir. 1998)). This remains true even where, as here, the plaintiff has past experience with the FDCPA.[26]

A debt collector who is found to have violated the FDCPA is liable for actual damages incurred by the plaintiff, as well as any other damages that the court, in its discretion, may find appropriate, not to exceed $1,000, plus reasonable attorney's fees and costs.[27]

---

[25] *Id*. at 62.

[26] 257 F.R.D. 343, 347 (E.D.N.Y. 2009).

[27] See 15 U.S.C. § 1692k(a); *Russell*, 74 F.3d at 33. Moreover, the FDCPA is a strict liability statute. *See Russell*, 74 F.3d at 34.

### III.     Defendants are debt collectors attempting to collect a debt

The FDCPA applies only to "debt collectors" seeking satisfaction of "debts" from "consumers"; it does not apply to "creditors."[28] The FDCPA's statutory definition of "debt collector" has two subcategories. It includes any person who: (1) uses an instrumentality of interstate commerce or the mails in "any business the principal purpose of which is the collection of any debts"; *or* (2) "regularly collects or attempts to collect ... debts owed or due or asserted to be owed or due another."[29]

The definition of debt collector also contains certain enumerated exclusions, one of which is relevant here:

> The term [debt collector] does not include ...
>
> (F) any person collecting or attempting to collect any debt owed or due or asserted to be owed or due another to the extent such activity ... (iii) *concerns a debt which was not in default at the time it was obtained by such person* ....[30]

"For purposes of applying the Act to a particular debt, these two categories – debt collectors and creditors – are mutually exclusive."[31] But "for debts that do not originate with the one attempting collection, but are acquired from another, the collection activity related to that debt could logically fall into either category."[32] In the leading case of *Schlosser v. Fairbanks*, the Seventh Circuit noted that in such a case – one involving a debt originated by another and subsequently acquired by the entity attempting collection – "the Act uses the status of the debt at the time of the assignment" to distinguish between a debt collector and a creditor.[33]

---

[28] *Schlosser v. Fairbanks*, 323 F.3d 534, 536 (7th Cir. 2003) (citing 15 U.S.C. § 1692a(4)).
[29] 15 U.S.C. § 1692a(6).
[30] 15 U.S.C. § 1692a(6)(F)(iii) (emphasis added).
[31] *Schlosser*, 323 F.3d at 536.
[32] *Id*.
[33] *Id*.

The focus therefore is on the status of the obligation asserted by the assignee.[34]

Accordingly, the purchaser of a debt in default is a debt collector for purposes of the FDCPA even though it owns the debt and is collecting for itself.[35]

Although the FDCPA does not define the term "default." Black's Law Dictionary defines default as "[t]he omission or failure to perform a legal or contractual duty; esp., the failure to pay a debt when due."[36] And the Second Circuit held in *Alibrandi* that in the absence of a statutory definition of default, the definition (if there is one) contained in the applicable loan or credit agreement is used to determine if and when the debt is in default.[37]

Here, Green Tree admitted in its Responses to Requests for Admission that it "is a 'debt collector' as defined by 15 U.S.C. § 1692a(6)"[38] which leaves the only remaining issue whether the Castros' mortgage debt was "in default" when assigned to Green Tree. On this point there can be no quibbling, because Green Tree's own 30(b)(6) witness admitted that the Castros' mortgage debt was declared "in default" by its predecessor, BAC Home Loan Servicing, LP,

---

[34] *Id.* at 538.

[35] *Id.* at 538-39; *see also FTC v. Check Investors, Inc.*, 502 F.3d 159, 171-74 (3d Cir. 2007) (holding that an entity engaged in collection activity on a defaulted debt acquired from another is a "debt collector" under the FDCPA even though it "may actually be owed the debt").

[36] Black's Law Dictionary (9th ed. 2009).

[37] *See Alibrandi v. Financial Outservicing Services, Inc.*, 333 F.3d 82, 88 (2d Cir. 2003). Defendant, Financial Outsourcing Services, Inc., claimed to be a debt "service provider" that claimed to only take over "servicing" debts that were "not in default." But (allegedly) unbeknownst to Financial Outsourcing, First Union had already treated the debt as having been "in default" by sending it out for collection by a prior debt collector, North Shore Agency, Inc. The Second Circuit held that once the debt had been declared "in default" by an agent of First Union, "Financial Outsourcing had no ability to change that status . . . ." "Financial Outsourcing may sincerely have believed it was servicing a debt that was not in default, but that is irrelevant. If First Union had, through North Shore, declared Alibrandi's outstanding debt to be in default, then the default would have continued during Financial Outsourcing's subsequent collection efforts . . . ."

[38] *See* Plaintiff Mario Castro's First Request for Admission of Facts, ¶ 10, and Defendant Green Tree's Responses, copies of which are attached to the accompanying Declaration of Brian L. Bromberg (the "Bromberg Decl."), dated January 24, 2013, as Exhibits 1 and 2.

9

before September 1, 2009, when the account was assigned to Green Tree. This is what the

witness had to say:

> Q. When was this account assigned to Green Tree?
> A. September 1st.
> Q. September 1st of 2009?
> A. Yes, sir.
> Q. Now I'm calling your attention to Plaintiff's Exhibit 12.
> This letter indicates that as of October 28, 2009 the Plaintiffs, the
> Castros, were in default for 73 days, correct?
> A. Correct.
> Q. So were the Castros in default before September 1,
> 2009?
> A. Yeah, the loan was. It appears to me that we acquired it,
> and the loan was past due.
> Q. So the loan was in default before Green Tree acquired
> the loan?
> A. I believe so. I'd have to look at the payment history to
> verify that, but I think that is accurate.
> [Derrick Deposition Exhibit No. 13 was marked for
> identification.]
> THE WITNESS: It was.
> *       *       *
> Q. And having reviewed that document, as well as
> Plaintiff's Exhibit 12, were the Plaintiffs in default when Green
> Tree acquired the right to try to collect this account?
> A. Yes. Yes.[39]

This testimony that the debt was in default when Green Tree began "servicing" is complemented

by Defendants' responses to Plaintiff Mario Castro's First Requests for Admission.[40] Thus, the

Castros account was in default when it was assigned to Green Tree for collection and Green Tree

is a collector within the meaning of the FDCPA.

---

[39] *See* pages 234-36 of the Deposition Transcript of Stewart M. Derrick, relevant pages of which
are attached to the Bromberg Decl. as Exhibit 3.

[40] *See* page 7 of Defendants' responses, especially responses to Requests for Admission Nos. 4
and 5, attached as Exhibit 2 to the Bromberg Decl. The Requests for Admission themselves are
attached as part of Exhibit 1 to the Bromberg Decl.

Similarly, Defendant Smith admitted during his deposition that he acted as a debt collector in his day-to-day contacts with consumers and more particularly, when he called the Castros and their neighbors:

> Q. When you were working at Green Tree for that approximate one year, were you working basically as a collector?
> A. Yes, sir.
> Q. What were your daily tasks as a collector?
> A. To get the individuals current.
> Q. So basically it was outbound collection calls?
> A. Correct.[41]

### IV.   Plaintiffs are consumers; Defendants were trying to collect consumer debts

The FDCPA provides that "(t)he term 'consumer' means any natural person obligated or allegedly obligated to pay any debt."[42] Because anyone "allegedly obligated" to pay a debt is included in this definition, even a person incorrectly identified as obligated, such as a victim of mistaken identity or a legally unobligated spouse, falls within the term "consumer."[43] Because the Castro's are natural persons, they fit the first part of the definition of consumer. The FDCPA provides that:

> The term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment.[44]

---

[41] *See* pages 6-7 of the Deposition Transcript of Kevin Smith, relevant pages of which are attached as Exhibit 4 to the Bromberg Decl.

[42] 15 U.S.C. § 1692a(3).

[43] *See, e.g.*, Goff, FTC Informal Staff Letter (Dec. 13, 1993) (person who lived with primary obligor of debt owed utility company may be "consumer" for purposes of FDCPA, with same rights to dispute debt as primary obligor; collector is not required to "go behind" creditor to determine if creditor is correct in seeking payment from third party).

[44] 15 U.S.C. § 1692a(5).

Here, as set forth in the accompanying declarations, neither of the Castro's have ever owned their own business and they took out the second mortgage on their sole and primary residence – upon which Green Tree attempted to collect – to support themselves and their children. Thus, the Castro's home mortgage is a "consumer debt," having been taken out and used solely for personal, household or family purposes.

## V.   Defendants' phone messages violated the FDCPA

In an attempt to collect the alleged debt, the Defendants left the Plaintiffs several messages on the Plaintiffs' voice mail.[45] The messages were left by Defendant Kevin Smith.[46] Smith admits to leaving the messages.[47] Not one of the messages left by the Defendants contains the notices required by 15 U.S.C. § 1692e(11), which requires that in each communication with a consumer, the debt collector identify himself as a debt collector.[48] This notice is commonly referred to as the "mini-Miranda" notice.[49]

By failing to identify themselves as debt collectors in every communication with the Plaintiffs, Defendants violated 15 U.S.C. § 1692e(11). While the Plaintiffs refer the Court to Exhibits I and J for the content of each of the calls, following are three messages that Defendant Smith testified about during his deposition.[50]

> This is a message for Mario Castro. This is Kevin Smith with Green Tree. Please return my phone call. I'm not sure why you're avoiding me when I think we can talk about anything, whether it be

---

[45] *See* accompanying Declaration of Krisber Castro (the "Krisber Decl."), dated January 24, 2013.
[46] Exhibit I to the Krisber Decl. is a transcript of the voicemail messages; Exhibit J to the Krisber Decl. is a CD-R containing WAV files of the voicemail messages.
[47] *See* pages 104-111 of the Deposition Transcript of Kevin Smith, relevant pages of which are attached as Exhibit 4 to the Bromberg Decl.
[48] *Foti v. NCO Fin. Sys.*, 424 F. Supp. 2d 643, 668-669 (S.D.N.Y. 2006)
[49] *Ehrich v. I.C. Sys.*, 681 F. Supp. 2d 265, 273-274 (E.D.N.Y. 2010)
[50] *See* Krisber Decl.; pages 104-111 of the Deposition Transcript of Kevin Smith, relevant pages of which are attached as Exhibit 4 to the Bromberg Decl.

good or bad news. My phone number is 1-800-628-5071. My direct extension is 65305. I'll be here till 5 p.m. today. Hopefully can give me a call back.

This is a message for Mario Castro regarding Krisber Castro. Mr. Castro, I'm trying to do everything I possibly can to assist you regarding this matter. But if I can't get any return phone calls, then I'm going to have to give your relatives and neighbors a call so that they can give you a message since you're not calling me back from the message that I'm leaving. If you want to give me a call back, my number is 1-800-628-5071. My direct extension is 65305.

This message is for Krisber Castro. Ms. Castro, please return my phone call. This is Kevin Smith. I do not want to trouble your neighbors or your relatives, so if you can give me a call back before noon today that would be wonderful. My number is 1-800-628-5071. My direct extension is 65305.[51]

While the above messages contain numerous violations of the FDCPA, it is beyond cavil that they violate 15 U.S.C. § 1692e(11). The Defendants simply do not identify themselves as debt collectors as required under the statute.

## VI.   Green Tree's letter dated September 18, 2009 violated FDCPA § 1692g, and by extension, §§ -e, -e(2)(A), -e(5), -e(10), -f, and -f(1)

Section 1692g(a) of the FDCPA states, in relevant part, that "Within five days after the initial the initial communication with a consumer in connection with the collection of any debt, a debt collector shall . . . send the consumer a written notice containing (1) the amount of the debt . . . ." Congress enacted § 1692g to ensure that debt collectors gave consumers adequate information concerning their legal rights.[52]  Rights under § 1692g(a) must be effectively conveyed to the consumer debtor.[53]  Courts have regularly interpreted § 1692g(a) to require debt collectors to disclose the amount past due as of the date the letter is sent, *not* the consumer's

---

[51] All three messages are transcribed as part of Exhibit I to the Krisber Decl., and copies of the recordings appear as "WAV" files on the accompanying CD-R marked as Exhibit J.

[52] 1977 U.S. Code Cong. & Admin. News at 1702.

[53] *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir. 1988); *Baker v. G.C. Services Corp.*, 677 F.2d 775, 778 (9th Cir. 1982).

overall balance with the creditor.[54] The reason for requiring a statement of the amount past due,

rather than the overall balance is simple, having been well-articulated by the Seventh Circuit:

> if the total . . . balance really is the 'amount of the debt,' then a dunning letter providing only the total . . . balance that did not even mention the amount actually sought by the debt collector would be in compliance. Such a reading of the statute would defeat the provision's very purpose by increasing the confusion: a recipient would know neither the amount sought by the dunning letter nor the fact that she was not required to pay off her credit card balance in full."[55]

Here, in its initial letter dated September 18, 2009, Green Tree asserts a claim for the

entire balance of Castros' loan, totaling $81,263.47.[56] But as of the date of the initial letter, the

Castros' past-due balance was only approximately $1,021.20. This is apparent not only from the

testimony of Green Tree's 30(b)(6) representative – who testified that the debt had not been

accelerated – but from the "Monthly Billing Statement" sent to Krisber Castro on or about

September 26, 2009, which shows a "Past Due Payment" required of $1,021.20.[57] So what

should have appeared on the initial letter dated September 18, 2009, was the "amount of the

debt" of approximately $1,021.20, or roughly 1/80 of the amount demanded by Green Tree.

Thus, by failing miserably to set forth the amount due in its initial communication, Green Tree

---

[54] *See, e.g.*, *Barnes v. Advanced Call Ctr. Techs.*, 493 F.3d 838, 840 (7th Cir. 2007) ("[T]he 'amount of the debt' must be . . . the amount past due. Whatever may be owed to . . . Plaintiffs' creditors, is of no consequence."); *Miller v. McCalla*, 214 F.3d 872, 875-76 (7th Cir. 2000) ("The unpaid balance is not the debt; it is only part of the debt; the Act requires statement of the debt."); *Adlam v. FMS, Inc.*, No. 09-Civ-9129, 2010 WL 1328958, at *3 (S.D.N.Y. April 5, 2010) ("Under this section, debt collectors must disclose the amount past due as of the date the letter is sent, not the consumer's overall balance with the creditor."); *Dragon v. I.C. Sys., Inc.*, 483 F. Supp. 2d 198, 203 n.1 (D. Conn. 2007) (collecting cases that have interpreted *Miller v. McCalla* as requiring that the amount of debt to be stated is the amount due on the date a collection letter is sent).

[55] *Barnes*, 493 F.3d at 840.

[56] *See* Exhibit E to the Krisber Decl.

[57] *See* Exhibit G to the Krisber Decl.

not only violated § 1692g, but left the Castros puzzled as to (a) what they owed, and (b) whether

their mortgage had been accelerated.

By attempting to collect the full accelerated amount of the Castros mortgage debt –

without having accelerated it – Green Tree also violated: §§ 1692e and e(10), both of which

contain general prohibitions on collecting debts in a false and deceptive manner; § 1692e(2)(A),

which prohibits misstatements as to the character, amount or legal status of any debt; §

1692e(5),[58] which prohibits the threat to take any action which cannot legally be taken – in this

case the collection of 80 times the amount past due; § 1692f, which prohibits the use of unfair or

unconscionable means in the collection of any debt; and § 1692f(1), which prohibits the

collection of any amount unless the amount is permitted by the agreement creating the debt or by

law.[59]

---

[58] FDCPA § 1692e, entitled "False or misleading representations," reads in relevant part as
follows:

> A debt collector may not use any false, deceptive, or misleading
> representation or means in connection with the collection of any
> debt. Without limiting the general application of the foregoing, the
> following conduct is a violation of this section:
> *        *        *
> (2) The false representation of --
> (A) the character, amount, or legal status of any debt; or
> (B) any services rendered or compensation which may be lawfully
> received by any debt collector for the collection of a debt.
> *        *        *
> (5) The threat to take any action that cannot legally be taken or
> that is not intended to be taken.
> *        *        *
> (10) The use of any false representation or deceptive means to
> collect or attempt to collect any debt or to obtain information
> concerning a consumer.

[59] FDCPA § 1692f, entitled "Unfair practices," reads in relevant part as follows:

## VII.    Defendants' "Privacy Notice" violated the FDCPA

On or about September 26, 2009, Defendants sent the Plaintiffs a two-page bill along with a two-page document detailing with whom Green Tree intends to communicate regarding the Plaintiffs' debt.[60] The first page of the document states:

> **"IMPORTANT MESSAGES"**
> **This is an attempt to collect a debt and any information obtained will be used for that purpose.**
> YOUR ACCOUNT IS SERIOUSLY PAST DUE! CALL 800-643-0202 FOR PAYMENT ARRANGEMENTS[61]

The third page of the document contains a chart in which Green Tree explains to the Plaintiffs what information Green Tree intends to convey to third parties.[62] The chart falsely informs the Plaintiffs about Plaintiffs' legal rights, and falsely threatens to disclose information about the Plaintiffs' debt to third parties. Among a host of other information, the chart falsely indicates that the Defendants may convey Plaintiffs' "Transactional Information with us and our affiliates" to "non-affiliates."[63] FDCPA § 1692c(b) specifically prohibits the Defendant from communicating with third parties about the Plaintiffs' debt. The Defendants' false threat to convey such information is false and deceptive and violates the FDCPA's general prohibitions on false and

---

A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:

(1) The collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

[60] Exhibit G to the Krisber Decl.; pages 236-38 of the Deposition Transcript of the Stewart M. Derrick, the relevant portions of which are attached as Exhibit 3 to the Bromberg Decl.
[61] *See* Exhibit G to Krisber Decl.
[62] *Id.*
[63] *Id.*

deceptive conduct[64] and specific prohibition threatening to take acts that cannot legally be taken.[65] Defendants' threat to convey this information, coupled with a demand for payment, leaves the least sophisticated consumer believing that he better pay the debt to avoid having their personal information disclosed to the world.

This is particularly the case here, where the Defendants were not only threatening to call neighbors and relatives, but were actually doing so.[66] The seminal case on the unlawful use of "Privacy Notices" that violate the FDCPA is the Seventh Circuit case of *Ruth v. Triumph Partnerships*.[67] The facts of *Ruth* are virtually identical to those here.[68]

### A.  It is deceptive to misinform consumers about their legal rights

It is deceptive for a debt collector to misinform a consumer about what the debt collector is legally permitted to do. After thoroughly analyzing facts virtually identical to the instant matter, the Seventh Circuit in *Ruth* concluded:

> Thus, we conclude that the only reasonable conclusion an unsophisticated consumer could reach, upon receiving the collection letter and the notice, was that the defendants intended to share without permission the nonpublic information they had received by virtue of acquiring and collecting on the debts. As a matter of law, therefore, the notice constitutes "a threat to take . . . action that cannot legally be taken," 15 U.S.C. § 1692e(5), and a "false representation or deceptive means to collect or attempt to collect a[] debt," id. § 1692e(10). *Id*. at 802.

---

[64] 15 U.S.C. §§ 1692e and -e(10).

[65] 15 U.S.C. § 1692e(5).

[66] *See* accompanying Krisber Decl.; *see* accompanying Declaration of Mario Castro, dated January 24, 2013.

[67] 577 F.3d 790, 801-02 (7th Cir. 2009).

[68] The only difference is that the Privacy Notice in *Ruth* offered the consumer the ability to stop the Defendant from making the disclosures by "opting out." The Defendants here didn't even offer that; the Privacy Notice here essentially informed Plaintiffs that Green Tree could communicate Plaintiffs' financial information to third parties, and unless the debt was paid, there was nothing Plaintiffs could do to stop them.

It is inherently deceptive for a debt collector to convey false information about the parties' respective rights. The Ninth Circuit recently addressed a debt-collection letter that falsely implied that a debt collector had the legal right to report negative credit information about the consumer to a credit bureau.[69] Citing to the Seventh Circuit's decision in *Ruth*, as well as *Bentley v. Great Lakes Collection Bureau*,[70] the Ninth Circuit in *Gonzales v. Arrow Financial Services*, confirmed that it is a violation of 15 U.S.C. § 1692e to misstate the law in a collection letter.[71]  The Court stated:

> To the least sophisticated debtor, the phrase "if we are reporting the account, the appropriate credit bureaus will be notified that this account has been settled" suggests two possibilities. It suggests the possibility that Arrow was not reporting the debt to a credit reporting agency, and would accordingly make no further report in the event of settlement. But the phrase also suggests that, under some set of circumstances applicable to the recipient, Arrow could and would report the account. Absent any possibility that Arrow *could* report the accounts, there would be no reason for Arrow to assert its intention to make a positive report in the event of payment. Only the first reading is actually correct, but the second reading is far from "bizarre" or "idiosyncratic"—it is eminently reasonable. As there is no circumstance under which Arrow could legally report an obsolete debt to a credit bureau, the implication that Arrow could make a positive report in the event of payment is misleading.[72]

The Sixth Circuit has also confirmed that it is a violation of 15 U.S.C. § 1692e to misinform a consumer about the consumer's legal rights. In *Gionis v. Javitch, Block & Rathbone, LLP*,[73] the Court ruled that it was a violation of 15 U.S.C. § 1692e to falsely inform a consumer that the debt collector was permitted to collect attorney's fees under "applicable law." The Court in *Gionis* stated:

---

[69] *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055 (9th Cir. 2011).
[70] 6 F.3d 60, 61-63 (2d Cir. 1993),
[71] *Id.* at 1063.
[72] *Id.* at 1063 (citations omitted).
[73] 238 Fed. Appx. 24 (6th Cir. 2007).

> Since Javitch sued in Ohio and the Affidavit leaves the "applicable law" undefined, the least sophisticated consumer (who is both "naïve" and "below-average sophistication") would, without question, conclude the "applicable law" to be Ohio law. (It does not matter that a more sophisticated consumer would have discovered that the "applicable law" is actually "federal law, and laws of Arizona" under the credit card agreement). And the phrase "to *the* extent permitted" suggests (at least to the least sophisticated consumer) that *some* extent is in fact permitted under Ohio law. "Why else," the consumer would wonder, "would Javitch attach this language to the complaint if Ohio law does *not* permit attorney fees here?"[74]

The Court then concluded:

> Accordingly, we conclude that Javitch made a "threat to take an action that cannot legally be taken," in violation of § 1692e(5), which also amounted to "false representation or deceptive means to collect or attempt to collect a[] debt[,]" in violation of § 1692e(10).[75]

It thus appears beyond reasonable dispute that misinforming a consumer about Defendant's legal rights is false and deceptive and a violation of 15 U.S.C. § 1692e, particularly where that misinformation is accompanied with a demand to pay the alleged debt.

### B. Defendants' letters to plaintiffs misinform them about their legal rights and threaten to do something legally prohibited

In one envelope, the Defendants sent their demand for payment, along with their illegal threats to disclose the Plaintiffs' information. Defendants' misrepresentations regarding the parties' rights violate 15 U.S.C. §§ 1692e and 15 U.S.C. § 1692e(10), in that they are false, deceptive and misleading representations made in connection with the attempt to collect a debt. Additionally, the representations would be viewed by the least sophisticated consumer as a threat

---

[74] *Id.* at 28 (citations omitted) (emphasis in original).
[75] *Id.* at 30.

by Defendants to disclose prohibited information to third parties. As such, the Defendants have also violated 15 U.S.C. § 1692e(5).

Under the heading of, "What?" the Defendants detail what information they intend to share with others, which includes not only the Plaintiffs' debt information, but also information about the Plaintiffs' children.[76] Then under the heading of "Does Green Tree Share?" the Defendants indicate that they intend to share this information with a host of third parties, including, "non-affiliates" for marketing purposes.[77]

Defendants' threatened disclosures are prohibited by the FDCPA, 15 U.S.C. § 1692c(b) (as well as the Fair Credit Reporting Act, 15 U.S.C. § 1681b). For Green Tree to indicate that it has the legal right to make such disclosures is clearly in violation of 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10).[78] Further, the threat to disclose the information, when in fact it is legally prohibited from doing so, is a violation of 15 U.S.C. § 1692e(5) in that it constitutes a threat to take an action that legally cannot be taken. The Seventh Circuit in *Ruth* summarized this as follows:

> The defendants argue that the notice does not falsely claim a right to share the plaintiffs' nonpublic information because it states that the defendants will do so only "to the extent permitted by law." To threaten to take some action "to the extent permitted by law," however, is to imply that, under some set of circumstances and to some extent, the law actually permits that action to be taken. Here, the defendants have suggested no set of circumstances under which the FDCPA would have permitted disclosure of the plaintiffs' nonpublic information without their consent. If anything, the

---

[76] *See* Exhibit G to the Krisber Decl.
[77] *Id.*
[78] *Ruth v. Triumph P'ships*, 577 F.3d 790 (7th Cir. 2009); *Grden v. Leikin*, 2010 U.S. Dist. LEXIS 3740 (E.D. Mich. Jan. 19, 2010); *Hernandez v. Midland Credit Mgmt.*, 2007 U.S. Dist. LEXIS 16054 (N.D. Ill. Mar. 6, 2007); *Chapman v. Worldwide Asset Mgmt., L.L.C.*, 2005 U.S. Dist. LEXIS 41528, 10-11 (N.D. Ill. Apr. 6, 2005); *Blair v. Sherman Acquisition*, 2004 U.S. Dist. LEXIS 25106 (N.D. Ill. Dec. 9, 2004) and *Stewart v. Asset Acceptance LLC*, No. 04 CV 1213, 6-8 (S.D. Ind. Nov. 19, 2004).

> notice's implication to the contrary makes the statement more
> misleading, not less.
>
> Thus, we conclude that the only reasonable conclusion an
> unsophisticated consumer could reach, upon receiving the
> collection letter and the notice, was that the defendants intended to
> share without permission the nonpublic information they had
> received by virtue of acquiring and collecting on the debts. As a
> matter of law, therefore, the notice constitutes "a threat to take . . .
> action that cannot legally be taken," 15 U.S.C. § 1692e(5), and a
> "false representation or deceptive means to collect or attempt to
> collect a debt."[79]

It is clear that the Defendants' threats to illegally disclose the Plaintiffs' information to a variety of third parties, was false and deceptive, and was a threat to take an action that cannot legally be taken. Thus, Defendants' privacy notice document[80] violates 15 U.S.C. § 1692e(5), in addition to 15 U.S.C. § 1692e and 15 U.S.C. § 1692e(10).

**VIII. Green Tree's letter dated October 28, 2009 violated FDCPA § 1692g, and by extension, §§ -e, -e(2)(A), -e(5), -e(10), -f, and -f(1)**

FDCPA §§ 1692e and -e(10) prohibit the use of false and deceptive methods in the collection of debts; FDCPA § 1692e(2)(A) prohibits misrepresenting the character, amount or legal status of any debt; FDCPA § 1692e(5) prohibits the threat of taking any action that a debt collector does not intend to take or cannot legally be taken; FDCPA § 1692f prohibits the use of unfair or unconscionable methods in the collection of any debts.

Here, Green Tree has violated all of these provisions by sending a 90-day notice threatening that "YOU COULD LOSE YOUR HOME."[81] First, paragraph 20 of the Castros' Mortgage contains specific provisions requiring a notice of default/notice of acceleration be

---

[79] *Ruth*, 577 F.3d at 801-802.
[80] Exhibit G to the Krisber Decl.
[81] Exhibit H to the Krisber Decl.

mailed, containing detailed information about the default and how to cure.[82] Before this notice is sent and the cure period expires, foreclosure cannot proceed. Instead of complying with the terms of the Mortgage, Green Tree sent a 90-day notice that mimicked a real notice, but contained none of the required content. Moreover, Green Tree's 30(b)(6) witness testified that because there was no equity in the Castro home, Green Tree was not actually going to foreclose on the Castro home. Green Tree testified that these notices are just mailed out by the system and that no human being actually considers whether the letter is true before the letter is sent.[83]

Thus, by threatening foreclosure when it had no intention of foreclosing and could not legally do so under the Mortgage, Green Tree: threatened an action that could not be legally taken and that it had no intention of taking, in violation of § 1692e(5) and misstated that the Castros' account was in foreclosure in violation of § 1692e(2)(A). Moreover, this action constituted a deceptive and misleading practice under § 1692e and –e(5), and an unfair and unconscionable practice under § 1692f.

### Conclusion

The Defendants left Plaintiffs' messages that failed to indicate that they were debt collectors, in violation of 15 U.S.C. § 1692e(11). They also mailed Plaintiffs letters that misstated the amount of the alleged debt in violation of 15 USC 1692g; 15 USC 1692e; and 15 USC 1692f. Additionally, they mailed Plaintiffs letters that falsely indicated that Defendants intended to foreclose on the Plaintiffs' home.  Finally, the Defendant mailed Plaintiffs a letter threatening to disclose the Plaintiffs' personal information to third parties in violation of 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(10), and 15 U.S.C. § 1692e(5). The Plaintiffs respectfully

---

[82] *See* ¶ 20 of the Castros' Mortgage; copies of the Castros' Note and Mortgage are attached to the accompanying Krisber Decl. as <u>Exhibits A and B</u>, respectively.
[83] *See* pages 206-27 of Deposition Transcript of Stewart Derrick, attached as <u>Exhibit 3</u> to the Bromberg Decl.

request that the Court grant the Plaintiffs' partial summary judgment on these claims, and

schedule a jury to assess the Plaintiffs' remaining claims, (under the FDCPA and TCPA) and to

determine all damages.

Dated:  New York, New York
        January 24, 2012



                                              /s/ Brian L. Bromberg
                                               Brian L. Bromberg

**Attorneys for Plaintiffs**

Brian L. Bromberg
Michael N. Litrownik
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906

Joseph M. Mauro
The Law Office of Joseph Mauro, LLC
306 McCall Ave.
West Islip, NY 11795
Tel: (631) 669-0921

Ronald Wilcox
The Law Office of Ronald Wilcox
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel: (408) 296-0400