UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| **KRISBER CASTRO and MARIO CASTRO,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | **No. 10-cv-7211(ER)(PED)** |
| | ) | |
| **v.** | ) | |
| | ) | |
| **GREEN TREE SERVICING LLC, and** | ) | |
| **KEVIN SMITH,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**Plaintiff Mario and Krisber Castro's
Reply Memorandum in Further Support of their
Motion for Partial Summary Judgment against
Defendants Green Tree Servicing LLC and Kevin Smith**

**Respectfully Submitted,**

**Attorneys for Plaintiffs
Mario and Krisber Castro**

Brian L. Bromberg
Michael N. Litrownik
Bromberg Law Office, P.C.
40 Exchange Place, Suite 2010
New York, NY 10005
Tel: (212) 248-7906

Joseph M. Mauro
The Law Office of Joseph Mauro, LLC
306 McCall Ave.
West Islip, NY 11795
Tel: (631) 669-0921

Ronald Wilcox
The Law Office of Ronald Wilcox
2160 The Alameda, First Floor, Suite F
San Jose, CA 95126
Tel: (408) 296-0400

**Table of Contents**

I.  Contrary to Green Tree's claims, its letter dated September 18, 2009 violated
    FDCPA § 1692g, and by extension, §§ -e, -e(2)(A), -e(5), -e(10), -f,
    and -f(1)……………………............................................................................1

    A.  By its own terms, Green Tree's initial letter, dated September 18, 2009,
        was sent in connection with the collection of a debt, triggering a requirement to
        provide all of the information required under § 1692g…………………………1

    B.  Green Tree's claim that it can somehow relate the "amount of the debt"
        set forth in the letter dated September 26, 2009, back to the
        initial validation-notice letter dated September 18, 2009, relies on an
        intentional mischaracterization of § 1692g……………………………………...3

II.  Green Tree's "Privacy Notice" violated the FDCPA…………………………………7

III. Green Tree's 90-day notice violated the FDCPA because Green Tree's notice did not
     accelerate the mortgage, even though it pretended to, and Green Tree's own 30(b)(6)
     witness testified that Green Tree had no intent of foreclosing………………………..8

IV. Defendants' voicemails violate FDCPA § 1692e(11)…………………………............9

V.  Defendants' claim that they did not contact the Castros' neighbors is
    belied not only by the very testimony cited, but by Kevin Smith own
    testimony and by Defendants' own collection notes……………………………………10

VI. Conclusion……………………………………………………………………………10

**I.    Contrary to Green Tree's claims, its letter dated September 18, 2009 violated FDCPA § 1692g, and by extension, §§ -e, -e(2)(A), -e(5), -e(10), -f, and -f(1)**

As explained in the Castros' initial motion papers, Green Tree violated § 1692g by sending an initial letter, dated September 18, 2009, in which Green Tree asserted a claim for the entire balance of Castros' loan, totaling $81,263.47.[1] But as of the date of the initial letter, the Castros' past-due balance was only approximately $1,021.20, as demonstrated by the "Monthly Billing Statement" sent to Krisber Castro on or about September 26, 2009, which shows a "Past Due Payment" required of $1,021.20.[2] Obviously, the initial letter misstated the amount owed.

Faced with this apparent contradiction, Green Tree has manufactured three defenses: (1) Green Tree now claims that the September 18, 2009 validation-notice letter was merely a statement of the total amount of the Castros' mortgage debt, not a demand for payment; (2) that within five days of the September 18, 2009 letter, that is, on or about September 21, 2009, Green Tree sent a letter advising that a "monthly statement" from Green Tree would be forthcoming; and (3) that on or about September 26, 2009, Green Tree included the "amount of the debt" within the "Monthly Billing Statement" sent to the Castros, thereby relating back to – and completing or correcting – the earlier incorrect validation-notice letter, dated September 18, 2009.[3] Plaintiffs will address Green Tree's claims one at a time.

**A.    By its own terms, Green Tree's initial letter, dated September 18, 2009, was sent in connection with the collection of a debt, triggering a requirement to provide all of the information required under § 1692g**

---

[1] ECF# 52-5.

[2] ECF# 52-7.

[3] All three letters are part of the record at ECF# 52-5, 52-6, and 52-7.

To illustrate the absurdity of Green Tree's first defense that it was not actually demanding $81,263.47 from the Castros, the Court need look no further than the letter dated September 18, 2009 itself. There, in capital letters, Green Tree warns that

> AS OF THE DATE OF THIS LETTER, YOU OWE $81,263.47. BECAUSE OF INTEREST, LATE CHARGES, AND OTHER CHARGES THAT MAY VARY FROM DAY TO DAY, THE AMOUNT DUE ON THE DAY YOU PAY MAY BE GREATER. HENCE, IF YOU PAY THE AMOUNT SHOWN ABOVE, AN ADJUSTMENT MAY BE NECESSARY AFTER WE RECEIVE YOUR CHECK, IN WHICH EVENT WE WILL INFORM YOU BEFORE DEPOSITING THE CHECK FOR COLLECTION.[4]

In the same letter, Green Tree further warns that failure to dispute the alleged debt within 30 days of receipt of the letter will result in Green Tree's assumption that the debt is valid.[5] Finally, at the bottom of the letter, Green Tree warns that "THIS IS AN ATTEMPT TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE. GREEN TREE IS A DEBT COLLECTOR."[6]

Thus, the language in the letter itself belies Green Tree's claim that it is not a demand for payment. First, no dollar amount other than $81,263.47 appears anywhere in the letter, so it is reasonable for the least sophisticated consumer to conclude that failure to pay the only amount stated anywhere in the letter is what will result in the imposition of additional "interest, late charges, and other charges that may vary from day to day. . . ."[7] Second, Green Tree explicitly warns that failure to dispute the validity of $81,263.47 – the only amount stated on the letter – within 30 days of receiving the letter dated September 18, 2009 will result in Green Tree

---

[4] ECF# 52-5.
[5] *Id.*
[6] *Id.*
[7] *Id.*

assuming that the debt is valid.[8] Unless Green Tree is referring to the $81,263.47 demanded, this validation notice makes no sense. There is no other debt that the Castros could possibly dispute when the "Monthly Billing Statement," dated September 26, 2009, which set forth something closer to the true amount of the debt, $1,021.20, had not even been sent.[9]

> **B. Green Tree's claim that it can somehow relate the "amount of the debt" set forth in the letter dated September 26, 2009, back to the initial validation-notice letter dated September 18, 2009, relies on an intentional mischaracterization of § 1692g**

Green Tree's bizarre relation-back argument directly contradicts § 1692g. First, assuming for the moment that Green Tree's initial September 18, 2009 letter was not made "in connection with the collection of any debt," then either the "servicing transfer" letter, dated September 21, 2009, or the "Monthly Billing Statement," dated September 26, 2009, was the first "the initial communication with a consumer in connection with the collection of any debt."[10] Green Tree cannot have it both ways: either the letter dated September 18, 2012[11] is the initial communication triggering the obligation to send a debt-validation notice containing all of the information required under § 1692g, or one of the two letters sent shortly afterwards – the "servicing transfer" letter[12] or the "Monthly Billing Statement"[13] – triggered the validation-notice requirement. One of those three communications triggered the requirement under § 1692g to send a written notice containing *all* of the information required under § 1692g(a), *including* the "amount of the debt" as of the date of the validation notice, but no such notice went out.

---

[8] *Id*.
[9] ECF# 52-7.
[10] 15 U.S.C. § 1692g(a).
[11] ECF# 52-5.
[12] ECF# 52-6.
[13] ECF# 52-7.

Second, Green Tree's statement that "Section 1692g *expressly* provides that a validation notice can be contained in the initial communication, as here, while the amount due can come within five days thereafter" is false. FDCPA§ 1692g *expressly* provides precisely the opposite of what Green Tree claims: "Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, *unless the following information is contained in the initial communication or the consumer has paid the debt*, send the consumer a written notice containing"[14] the following:

- The amount of the debt;[15]

- The name of the creditor to whom the debt is owed;[16] *and*

- The 30-day validation notices required by this section.[17]

Unless *all* of these items of information are "contained in the initial communication," then they *all* must be contained in the communication sent within five days of the initial communication. That *all* of these items must be contained in a single written notice can be readily ascertained by noting that Congress used the singular "a written notice" in the phrase "send the consumer *a written notice*."[18] Moreover, by using the conjunctive "and" between the last two items on the list of information to be contained in "a written notice," Congress indicated that *all* of the information required in § 1692g(a)(1) through –(5) must be contained in the same written notice.[19]

Requiring all of this information to appear in a single written notice makes perfect sense, because all of the required pieces of information relate to each other and statutory time deadlines

---

[14] 15 U.S.C. § 1692g(a) (emphasis added).
[15] 15 U.S.C. § 1692g(a)(1).
[16] 15 U.S.C. § 1692g(a)(2).
[17] 15 U.S.C. § 1692g(a)(3), -(4), and –(5).
[18] 15 U.S.C. § 1692g(a).
[19] *Id*.

are triggered by the receipt of the written notice. Green Tree's theory is that it is permitted to dribble out portions of the required disclosures, while placing the burden on the consumer to piece everything together. Not only is that not what the statute says, but it is *inherently* confusing.  Plaintiff received a letter seeking $81,263.47 with the statutory notice giving Plaintiff 30 days to dispute.[20] At least eight days later, Plaintiff then received a "Monthly Billing Statement" seeking, among other amounts, a "Past Due Payment" of $1,021.20 without the required statutory notices.[21] There is no reasonable basis for the Plaintiff to believe that the $1,021.20 somehow replaces the $81,263.47, and in any event Green Tree's procedure is inherently contradictory.

Finally, Green Tree's reading makes a hash out of § 1692g. The validation notice gives consumers "within thirty days after receipt of the notice" to dispute – orally or in writing – "the validity of the debt, or any portion thereof" and to demand the name and address of the original creditor.[22] If the Court were to take seriously Green Tree's argument that the "amount of the debt" could be disclosed in a separate "Monthly Billing Statement" sent at least eight days after the Castros were sent the letter containing the validation notice, then there would be no way to tell (a) when the time to dispute the debt began running, or (b) which debt should be disputed, or (c) that a right to dispute even existed. Should the Castros have disputed the $81,263.47 set forth in the letter dated September 18, 2009, or one or more of the five separate numbers listed on the upper right corner of the "Monthly Billing Statement" ($960.09, $205.00, $79,800.92, $682.82, $1,021.20, and $1,704.02), sent at least eight days later?[23] And would the Castros' time to dispute start running when they received the letter dated September 18 or the "Monthly Billing

---

[20] ECF# 52-5.
[21] ECF# 52-7.
[22] 15 U.S.C. § 1692g(a).
[23] *Compare* ECF# 52-5 *with* ECF# 52-7.

Statement" dated September 26?[24] Moreover, nowhere in the "Monthly Billing Statement" dated September 26, 2009 did Green Tree advise the Castros that they even had a right to dispute the numbers set forth in the Statement or that the dispute rights were set forth in a letter sent eight days earlier.[25]

Finally, the validation notice is probably the most heavily litigated section of the entire FDCPA for good reason – it provides what are perhaps the strongest substantive rights in the Act. If a consumer timely avails him or herself of the dispute rights contained in § 1692g(a), the debt collector must "cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or any copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector."[26] All collection – including credit-reporting and litigation – must stop until verification has been obtained and mailed to the consumer.[27]

The bottom line is that Green Tree's letter scheme is inherently contradictory, leaving the Castros under the reasonable – but erroneous – belief that they must pay $81,263.47 or "interest, late charges, and other charges" are going to mount "day to day."[28] And considering that Green Tree is a debt collector who followed this initial letter with 550 phone calls, calls to neighbors, and threats to take the Castros' house, the Castros' belief that they had to pay $81,263.47 is eminently reasonable. Finally, even if Green Tree's letter were subject to two different

---

[24] *Id.*
[25] *Id.*
[26] 15 U.S.C. § 1692g(b).
[27] *Id.*
[28] ECF# 52-5.

interpretations, one that complied with the FDCPA and one that did not, the letter would still violate the FDCPA.[29]

## II.   Green Tree's "Privacy Notice" violated the FDCPA

Green Tree appears to have two objections to being held liable under the FDCPA for threatening to reveal information to third-parties. First, Green Tree claims that it was "*required by law to send this privacy notice to the plaintiffs.*" Second, Green Tree claims that "the privacy notice does not threaten or otherwise condition plaintiffs' privacy rights on the payment of their debt."

With respect to its first claim, Green Tree is required to provide a privacy notice that complies not only with the Gramm-Leach-Bliley Act (GLBA), but with the FDCPA.[30] For Green Tree to imply, as it does here, that it cannot comply with both statutes is absurd. At least three district courts have already approved of language in privacy notices purporting to comply with both statutes, including this Court.[31] GLBA only requires that certain companies disclose their privacy policy to consumers; it does not mandate what that policy is. The FDCPA, on the other hand, mandates a privacy policy for debt collectors. Those debt collectors that are required to send out GLBA privacy notices can comply with both statutes by informing consumers that they are not going to share their personal information.[32]

---

[29] *Russell v. Equifax A.R.S.*, 74 F.3d 30, 35 (2d Cir. 1996).

[30] *See Romea v. Heiberger*, 163 F.3d 111, 118 (2d Cir. 1998) (finding that landlord's attorneys must comply not only with the requirements of the New York Real Property Actions and Proceedings Law § 711, governing pre-suit rent demand, but with different, and in part more stringent, requirements of the FDCPA).

[31] *See, e.g.*, *Carr v. Northland Group, Inc.*, No. 12-CV-378, 2012 WL 6140480 (E.D. Tenn. Dec. 11, 2012); *Veerhusen v. Capital Management Services, LP*, No. 09-CV-354, 2010 WL 8019878 (D. Neb. Jan. 29, 2010); *Kinel v. Sherman Acquisition II, LP*, No. 05-CIV-3456, 2006 U.S. Dist. LEXIS 97073, *39-40 (S.D.N.Y. Feb. 28, 2006).

[32] *Kinel*, 2006 U.S. Dist. LEXIS 97073, at *39-40.

With respect to its second claim, Green Tree sent out a "Privacy Notice" that was accompanied, *in the same envelope*, by a "Monthly Billing Statement" demanding payment of a past-due debt that was in default.[33] In the "Privacy Notice," Green Tree advises that information will be impermissibly disclosed to third parties.[34] To the least-sophisticated consumer, the two documents – the demand and the statement as to what will be disclosed – are inextricably linked. For these reasons, the Seventh Circuit, when faced with a similar fact pattern in *Ruth v. Triumph Partnerships*, held that sending both a collection letter and a privacy notice in the same envelope was undoubtedly an attempt to collect a debt.[35] The Seventh Circuit rejected the argument that the privacy notice fell outside the scope of the FDCPA, because "The only relationship the defendants had with the plaintiffs arose out of [the defendant's] ownership of the plaintiffs' defaulted debt."[36] Second, the privacy notice was sent in the same envelope as the collection letter.[37] The Seventh Circuit concluded that "the defendants would not have sent this combination of materials to the plaintiffs if they had not been attempting to collect a debt," and thus the privacy notice was sent "in connection with an attempt to collect a debt."[38]

III.   **Green Tree's 90-day notice violated the FDCPA because Green Tree's notice did not accelerate the mortgage, even though it pretended to, and Green**

---

[33] ECF# 52-7.

[34] *Id.*

[35] 577 F.3d 790 (7th Cir. 2009).

[36] *Id.* at 799.

[37] *See Grden v. Leikin, Ingber & Winters, P.C.*, No. 09-10579, 2010 U.S. Dist. LEXIS 3740 ( E.D. Mich. Jan. 19, 2010) ("To fall under the ambit of § 1692e, the act or communication must be connected to an attempt to collect the debt. In *Ruth*, this connection arose from the fact that the privacy notice was mailed in the same envelope as a collection letter, making it objectively impossible to distinguish from an attempt to collect on the debt. *See also*, *Miller v. Midland Credit Mgmt., Inc.*, 621 F. Supp. 2d 621, 631 [N.D. Ill. 2009] [stating, in identical circumstances: 'Let us not be coy. A Privacy Notice that references the debt and is folded into the same envelope as a debt collection letter is a communication made 'in connection with the collection of a debt' for the purposes of 15 U.S.C. § 1692e.']").

[38] *Id.* at 798-99.

**Tree's own 30(b)(6) witness testified that Green Tree had no intent of foreclosing**

Green Tree has essentially thrown in the towel on this violation. First, Green Tree claims that the Castros cannot prove that when it sent the letter dated October 28, 2009,[39] Green Tree did not intend to foreclose. But Green Tree's own 30(b)(6) witness testified that these notices are mailed out by the system and that no human being actually considers whether the letter is true before the letter is sent.[40] Therefore, Green Tree is implicitly claiming that the Castros cannot prove whether Green Tree's *computer system* intended to foreclose. Second, Green Tree could not, as a matter of law, foreclose when the letter went out. At no time before sending the letter dated September 18, 2009, did Green Tree accelerate the Note.[41] And in none of its communications sent after September 18 and before October 28, 2009 did Green Tree purport to accelerate the Note.[42] So under the Castros' Mortgage, Green Tree simply did not have the right – on October 28, 2009 or 90 days later – to take away the Castros' home.[43] Therefore, as explicated in the Castros' initial motion papers, the threat that "YOU COULD LOSE YOUR HOME" was neither intended nor legally permissible when made.

## IV.   Defendants' voicemails violate FDCPA § 1692e(11)

Here, again, Green Tree appears to have thrown in the towel. In his messages, which Defendants admit to leaving,[44] Kevin Smith simply does not identify himself as a debt collector.

---

[39] ECF 52-8.

[40] *See* pages 206-27 of the Deposition Transcript of Stewart Derrick, which can be found at ECF# 51-3.

[41] *See* ¶ 18 of Green Tree's Response to the Castros' Rule 56.1 Statement, which can be found at ECF# 64.

[42] *See* ECF# 52-5, 52-6, 52-7.

[43] *See* ¶ 20 of the Castros' Mortgage; copies of the Castros' Note and Mortgage can be found at ECF# 52-1 and 52-2, respectively.

[44] *See* ¶s 41-43 of Green Tree's Response to the Castros' Rule 56.1 Statement, which can be found at ECF# 64.

Defendants cite no case law to contradict this clear-cut violation, instead merely imploring the

Court to let the matter go to a jury, presumably so that they can ask the jury to find in a manner

contrary to § 1692e(11). But summary judgment was created to avoid such crass attempts at civil

jury nullification that would require a finding of judgment notwithstanding the verdict.[45]

**V.     Defendants' claim that they did not contact the Castros' neighbors is belied not only by the very testimony cited, but by Kevin Smith own testimony and by Defendants' own collection notes**

       In the final section of their brief, Defendants attempt to claim that Kevin Smith never

contacted the Castros' neighbors. Because this matter is not part of their motion for summary

judgment, the Castros are not going to argue this issue now. Suffice it to say that this claim is

contradicted not only by the testimony cited by Defendants (in which an elderly, agitated

neighbor testified to speaking with someone), but by the testimony of Defendant Kevin Smith,

by Defendants' own collection logs, by the voicemails left by Kevin Smith, and by the Castros

themselves. Green Trees' only motivation in including a paragraph about this issue for the jury

appears to be to attempt to poison the well before trial.

**VI.     Conclusion**

       For all the aforementioned reasons, Plaintiffs ask that this Court grant their motion for

partial summary judgment as to liability.

Dated:  New York, New York
        February 21, 2013

                                     /s/ Brian L. Bromberg
                                     Brian L. Bromberg

---

[45] *See Clayson v. Rubin & Rothman, LLC*, 751 F.Supp.2d 491 (W.D.N.Y. 2010) (chastising Rubin & Rothman's counsel for "unprofessional" behavior during an FDCPA jury trial; granting partial judgment to Clayson notwithstanding a defense verdict on a clear violation of the FDCPA; faulting Clayson's counsel for failing to reduce the scope of the trial by moving for partial summary judgment before trial).