**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**


_____ **X**

**Krisber Castro and Mario Castro**


 **-against-**                                          **Docket No.  10-7211**



**Green Tree Servicing, LLC and**
**Kevin Smith**
                                    **Defendant**
_____ **X**


 **Memorandum in Opposition to Defendant's Motion for Summary Judgment**

## TABLE OF CONTENTS

**Introduction**…………………………………………………………….……… 1

I.     Facts…………. ………………………………………………….….... 1

II.     **Summary Judgment Standard** …………….………………… ………………4

III.     **Defendants Violated the TCPA** …..………………………………………. 4

     **A. Purpose of the TCPA** ……………………......................................................4

     **B. Elements of TCPA Claims**……………………......................................... 5

         i. The _Placement_ of Any Call is Illegal ……………………………………… 6

         ii. Plaintiff Need Not Be Charged for the Call to Establish Violation ………… 9

         iii. Predictive Dialers are "Automatic Telephone Dialing Systems" ………….. 10

**IV**    **Defendant's Affidavit Defense of "Prior Express Consent"** …...…..……….............. 12

     A. Meaning of "Express Consent" ………………………………………… 13

     B. Must be Express Consent _to be Robo-Called_ …..………………………….. 14

     C. The is No Evidence of Consent …………………………………………..14

**V . TCPA Damages** ………………………………………………………....16

     A. Willful or Knowing Standard Under the TCPA …………………………… 17

     B. Defendants Acted Willfully or Knowingly …………………………………17

**VI. Fair Debt Collections Practices Act Does NOT Cap Actual Damages** ………….. 19

     **Conclusion** ……………………………………………………………….... 25

## Introduction

Plaintiffs are suing the Defendant debt collectors because the Defendants harassed and abused the Plaintiffs over a two year period in an attempt to collect a debt. Defendants' actions include telephoning the Plaintiffs over 550 times; threatening to take the Plaintiffs' house away from them; calling and speaking to the Plaintiffs' neighbors; threatening to call the Plaintiffs' relatives; failing to provide the Plaintiffs with any of the debt collection notices required by federal law; and using a robo-caller to persistently telephone the Plaintiffs' cellular phones. Plaintiffs have sued under the Fair Debt Collection Practices Act (FDCPA); and the Telephone Consumer Protection Act (TCPA).   Defendants have moved for summary judgment to try to dismiss the Plaintiffs' TCPA claims, and have asked the Court to impose a cap on the amount of actual damages that the Plaintiffs can obtain under the FDCPA.  Defendants motions should be denied.  Defendant clearly violated the TCPA. They invaded the Plaintiffs' privacy in the exact manner the TCPA was intended to prevent. Defendants admit that they used a robo-dialer to call the Plaintiffs' cell phone. That alone establishes liability under the TCPA.  Defendants request to have the Court impose a cap on FDCPA actual damages would not only directly conflict with Congress's decision not to impose such a cap, but would also eliminate Plaintiffs' constitutional right to a jury. Juries in New York and around the Country award emotional distress damages for the sort of injuries Plaintiffs suffered far exceeding what Defendant suggests.

## I. Facts

In or around September 2009 Defendants began trying to collect the alleged debt from the Plaintiffs.   Defendants used their automatic telephone dialing system (a/k/a, robo-caller, auto-dialer, predictive dialer, or dialer) to call Plaintiffs' cellular phone at least 34 times between May

13, 2012 and October 15, 2010. (**30b(6) depo, pages 7-14 attached as Exhibit M; and**

**Defendant's account notes attached hereto as Exhibit A)**

      The telephone number Defendant called was 845-536-9192. There is no question that

number was Plaintiffs' cellular phone during the relevant time period.  In additional to the

Plaintiffs' testimony, the deposition of the Plaintiffs' cellular phone company, Verizon, confirms

this. **(See Verizon depo., page 4-6, attached as Exhibit B)**.  Plaintiffs have two cell phone

numbers under their plan with Verizon,  845-536-9192 and 845-536-9193  **(Plaintiffs Affs ; and**

**Verizon depo, page 4-6)**    Krisber Castro primarily uses the 845-536-9192 number and Mario

Castro primarily uses the 845-536-9193 number. **(Plaintiffs' Affs**. Plaintiffs receive one bill for

these accounts and pay the bill each month from their joint bank account. **(Plaintiffs' Affs.)**.

      There is no question that  Defendant used their predictive dialer to call 845-536-9192

34 times. The Defendant admits this.  At their deposition, Defendant was asked to identify each

time that the Defendant used their predictive dialer to call 845-536 -9192.  The Defendant very

clearly testified that they did so 34 times.  The Defendant actually went through their own

"account notes" and identified each call.[1]  **(30b(6) depo, pages 7-14; and Defendant's account**

**notes attached hereto as Exhibit A):**

**Q.** Okay. When you testified a few moments ago that Green Tree had called **--** used their auto
    dialer to call a cellular phone , were you referring to the 845-536-9192 number?
 **A** Yes. The 536-9192 number?
 **Q** Yes.
 **A** Yes.
 **Q** Okay. Well, let's just talk about calls that were made to that number. Starting at the
    earliest point in time, can you identify the first  time that **--** on these notes that Green Tree
    called 845-536-9192 using their auto dialer?
 **A**  It may take me a little while to go through the notes.
**MR . MAURO** : Okay . Why don't  we**--**why don't we go off the record for a couple minutes,
    and we'll let the witness     review his  notes **--** review  the  exhibit , I should say? And also

---

    [1]  Defendant actually identified 36 calls that were initiated by the Defendant's predictive
dialer, but claims that their dialer did not successfully complete the calls in 2 instances. **(30b(6)**
**depo, page, 10-11,  attached hereto as Exhibit M)**

Counsel can have a discussion that  may expedite this as well.  So I am going to pause the videotape momentarily so that we can  go off the record .

(Discussion off the record )

**MR . MAURO :** Okay . So I have begun the videotape again , and we are going back on the record .

**BY MR. MAURO**: So off the record, Counsel and the witness went through Exhibit 1, and  Counsel and the  witness marked 36 different calls on the exhibit with numbers 1 through 36, indicating calls that were made from the auto dialer to 845-536-9192;  is that correct, Mr. Derrick?

**A** Yes, sir.

**Q** So on Exhibit 1 now, we have little markings 1 through 36 corresponding to the 36 calls made from the auto dialer to 845-536-9192, correct?

**A** Correct.     **(30b(6) depo, page 9-10)**

_____

**Q** So is there a -- okay. With respect to the calls that were made , the 36 calls that were made with the auto dialer to the cell phones --withdrawn .With the -- with respect to any calls that were made with the auto dialer to the Castros , how do -- how does that process work? How did the auto dialer determine to place those calls?

**A**  I' m not sure I understand your question .

**Q** Okay .

**A** There's an algorithm, and somebody programs that auto dialer to dial . We have individual fields that we put phone numbers into and into our computer system . We put a home number and a work number. And that -- somebody tells that auto dialer to dial one or the other number in a particular run.

**Q** Okay . And is that -- is that direction to the auto dialer, is that done daily?

**A** I don' t know.  I don't know. I don't run the auto dialer. I can't -- I can't answer that.

**Q** Is it a predictive dialer?

**A** I believe it is a predictive dialer .

**Q** Okay .

**A** And by predictive, my understanding is it knows how many people are available to answer the call and it feeds them the calls at a certain rate based on how quickly they' re answering it or not answering it.

**Q** And that' s the predictive dialer that made the 36 calls that we marked on the exhibit?

**A** Yes, sir.  **(30b(6) depo, page 18-20)**

_____

**Q** All right . Now, is it fair to say that every time we see the initials xxx in these collection notes that it indicates a call made from the automatic dialer of Green Tree to whatever number follows?

**A Yes .**     **(30b(6) depo, page 9-10)**

Defendant clearly admits they used their predictive dialer to call 845-536-9192 at least 34 times; any assertion otherwise is frivolous.[2] Neither Plaintiff ever consented to be called on their

_____

[2]  Also **see Exhibit G**, Deposition of Defendant employee Tammy Beatty, page 60; and **Exhibit H**, Deposition of Defendant employee Brenda Becker page 202-203, confirming the

cellular phones by Defendant's robo-dialer. **(Plaintiffs' Affs).**  Defendant admits that they don't

know how they received Plaintiffs' cell phone number. **(30b(6), pages 243-245)**

## II. <u>Summary Judgment Standard</u>

Defendants have moved for Summary Judgment regarding the Plaintiffs' claims under

the TCPA.  Federal Rule of Civil Procedure 56(c) states that a Court should not grant summary

judgment unless "the pleadings, depositions, answers to interrogatories, and admissions on file,

together with affidavits, if any, show that there is no genuine issue as to any material fact and

that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c) *Celotex*

*Corp. v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986);

Additionally, the Court can grant Summary Judgment to the non-moving party sua-sponte

as long as the moving party had the opportunity to complete discovery, and present their

evidence. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325-326 (U.S. 1986); *23-34 94th St. Grocery*

*Corp. v. New York City Bd. of Health*, 685 F.3d 174, 180 (2d Cir. N.Y. 2012).

## III.  <u>Defendant Violated the Telephone Consumer Protection Act</u>

The Court has federal question jurisdiction over the Plaintiff's TCPA claims under 28

U.S.C Section 1331, and/or jurisdiction under 18 U.S.C. Section 1337. (*Mims v. Arrow Fin.*

*Servs. LLC*, 132 S. Ct. 740, 745 (U.S. 2012). [3]

### A. <u>Purpose of the TCPA</u>

The TCPA is at heart a privacy statute, intended to stop the invasion of privacy occurring

when an auto-dialer calls a person's cellular phone. *Mims*, 132 S. Ct. 740, 745 (debt collector

calling consumer's cell phone).   It is beyond argument that the TCPA is intended to stop

---

calls from the dialer. Also see Defendant's Interrogatory Response #4 Attached as **Exhibit L**  in
which they testify that their collection notes show all calls initiated by them to 845-536-9192.

intrusions upon a consumer's seclusion. *Id.* [4] In addressing a case where a debt collector was

robo-calling a consumer's cell phone, the Court *Meyer v. Portfolio Recovery Assocs., LLC*, 696

F.3d 943, 951 (9th Cir. Cal. 2012) recently noted:

> Here, Congress had several goals when it passed the TCPA, including prohibiting the use of automatic telephone dialing systems to communicate with others by telephone in a manner that invades privacy. See Satterfield, 569 F.3d at 954. Prohibiting the use of automatic dialers to call cellular telephones without express prior consent is a rational means of achieving this objective.

In another case where a debt collector was robo-dialing a consumer's cell phone, the

Court in *Torres v. Nat'l Enter. Sys.*, 2012 U.S. Dist. LEXIS 110514, 7-8 (N.D. Ill. 2012) noted:

> In addition, the court notes that it is apparent that the injury alleged by Torres is exactly the type of injury that Congress created the TCPA in order to redress. Congress was clearly not intending the TCPA to cover only rare instances when a phone message by a defendant could somehow be tied to a direct monetary loss or physical harm to the plaintiff. Under such a standard, defendants such as NES would be virtually immune to TCPA claims. In fact, Congress created the TCPA to specifically address the nuisance and invasion of privacy resulting from phone calls such as those alleged in the instant action. See *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009)

## B. Elements of  TCPA Claim

The TCPA prohibits calls to a person's cellular phone using an automatic telephone

dialing system. The TCPA, 47 U.S.C. § 227, makes it unlawful for:

> any person within the United States, or any person outside the United States if the recipient is within the United States—
> (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice — . . .
> (iii) to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]

---

[4] Also see: *Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943, 951 (9th Cir. Cal. 2012)(debt collection calls); *Bonime v. Avaya, Inc.*, 547 F.3d 497, 499 (2d Cir. N.Y. 2008); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. Cal. 2009); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. Ill. 2012) (debt collection calls); *Smith v. Microsoft Corp.*, 2012 U.S. Dist. LEXIS 101197, 13-15 (S.D. Cal. July 20, 2012); *Torres v. Nat'l Enter. Sys.*, 2012 U.S. Dist. LEXIS 110514, 7-8 (N.D. Ill. Aug. 7, 2012)(debt collection calls).

In order to prove liability under 47 U.S.C. § 227(b)(1)(A)(iii), the Plaintiff needs only to prove that the Defendant called Plaintiff's cellular phone using an automatic telephone dialing system. *Bates v. I.C. Sys.*, 2009 U.S. Dist. LEXIS 96488 (W.D.N.Y. Oct. 19, 2009). [5]

The Plaintiffs herein have clearly established that the Defendant violated the TCPA by making the 34 calls. The Defendant admits it.  The Defendant has admitted that they used their auto-dialer to call 845-536-9192  34 times. **(30b(6) page 18-20)**  It is uncontested that the 845-536-9192 was the Plaintiffs' cellular phone.  **(Plaintiffs' Affs; Depo of Verizon page 4-6)** [6]

### i. The *Placement* of Any Call is llegal

Under the TCPA it is illegal to "<u>make any call</u>" using an automatic telephone dialing system to a cellular phone.   It is the *placement* of the call that creates the liability; not the receipt. Defendant need only *attempt* to communicate with Plaintiff via an illegal means in order to establish liability. In *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 953-954 (9th Cir. Cal. 2009), the Court noted:

> The precise language at issue here is what did Congress intend when it said "to make any call" under the TCPA. Utilizing the aforementioned canons of statutory construction, we look to the ordinary, contemporary, and common meaning of the verb "to call." Webster's defines "call" in this context n3 as "to communicate with  or  try to get into communication with a person by a telephone." Webster's Third New International Dictionary 318 (2002). This definition suggests that by enacting the TCPA, Congress intended to regulate the use of an ATDS to communicate or try to get into

---

[5] Also See: *Manfred v. Bennett Law, PLLC*, 2012 U.S. Dist. LEXIS 173935 (S.D. Fla. Dec. 7, 2012); *Harris v. World Fin. Network Nat'l Bank*, 2012 U.S. Dist. LEXIS 46882 ( E.D. Mich. Apr. 3, 2012) (describing elements of TCPA claim)   The Court should note that the TCPA clearly applies to debt collectors calling <u>cellular</u> phones. *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 564 (F.C.C. 2007); Mims,132 S. Ct. 740, 745; *Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943, 951 (9th Cir. Cal. 2012); *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637 (7th Cir. Ill. 2012).   Debt collection calls to <u>landlines</u> are likely exempt from the TCPA. *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Rcd 559, 564 (F.C.C. 2007); *Santino v. NCO Fin. Sys.*, 2011 U.S. Dist. LEXIS 18185 (W.D.N.Y. Feb. 23, 2011).

communication with a person by a telephone.

The Court in *Fillichio v. M.R.S. Assocs.*, 2010 U.S. Dist. LEXIS 112780, 7-8 (S.D. Fla.

Oct. 19, 2010) rejected another debt collector's attempt to avoid liability with this argument:

> The plain language of the Act prohibits "mak[ing] any call . . . using any automatic telephone dialing system . . . [to] any telephone number assigned to a . . . cellular telephone service." See § 227(b)(1)(A) (emphasis added). MRS is essentially arguing that the statute's prohibition language   not only requires that a call be "made" or placed using an automatic telephone dialing system, but that the owner of the cellular telephone number be "aware" of the calls. The text of the TCPA, however, does not include such a requirement.
> …
> Moreover, even if I were to engage in a different statutory construction of the TCPA, the result would be the same. Because the TCPA  does not provide a definition for the word "call," I would be required to interpret the word according to its "ordinary, contemporary, common meaning." *See, e.g., Perrin v. United States*, 444 U.S. 37, 42, 100 S. Ct. 311, 62 L. Ed. 2d 199 (U.S. 1979) ("A fundamental canon of statutory construction is that, unless otherwise defined, words will be interpreted as taking ordinary, contemporary, common meaning."). In *Satterfield v. Simon & Shuster*, 569 F. 3d 946, 953-954 (9th Cir. 2009) (citation omitted), the Ninth Circuit, examining the same provision of the TCPA, noted that the dictionary definition of "call" in this context was "'to communicate with or try to get into communication with a person by a telephone.'" *Id.* at 953-954 (quoting Webster's Third New International Dictionary (2002). Based on that definition, the Ninth Circuit found that, in the TCPA, "Congress intended to regulate the use of an [automatic telephone dialing system] to communicate or *try to get into communication* with a person by a telephone." *See id*. at 954 (emphasis added). Accordingly, the prohibition in the TCPA applies to phone calls placed to cellular telephone numbers even if the intended recipient does not answer the calls. It is the mere act of placing the call that triggers the statute.

Also See: *First Nat'l Collection Bureau, Inc. v. Walker*, 348 S.W.3d 329, 338-344 (Tex. App.

Dallas 2011) (Analyzing the difference between the "make a call" language of TCPA and the

"actually received" language of a Texas state statute, the Court concluded that the Supremacy

clause requires application of the TCPA "make a call" language, and found debt collector liable

for making calls to cell phone). [7]

---

[7] The TCPA also prohibits unsolicited faxing., i.e. junk faxes. The Court should note that TCPA case law is replete with cases concluding that the statute was aimed at regulating the conduct of the Defendant, and thus it is *sending* a fax that is prohibited. Receipt is irrelevant. *Van*

In any event, Plaintiffs <u>were</u> well aware of the phone calls being received on their cell

phone.  The cell phone rang when the Defendant's dialer called and Plaintiffs heard it.

**(Plaintiffs' Affs)**  That is the invasion of privacy. Defendant admits to placing the calls 34 calls

in question. Defense counsel suggesting that there are only four calls is disingenuous at best

(and, is in any event, clearly misleading)  As support for their argument, Defendant points to

Verizon phone records that indicate four calls received by Plaintiff from Defendant. But of

course, the phone records only show calls where Plaintiff and Defendant *actually spoke* on the

phone. The phone records do not show the calls where Defendant called and left a message on

the Plaintiff's answering machine, nor calls where Defendant called and hung up when Plaintiff

didn't answer. **(Verizon Depo. pages 18-19)**  Defense counsel knows this, because he asked the

Verizon Wireless deponent this exact question at deposition:

**Q (by Defense Counsel):**  If a call is made to the Verizon cell phone but not connected, will it
   show up on the statement?
**A:**  Not these records. These records reflect only billable calls.
**Q:**  What would be an example of a billable call?
**A:**  If a call was made to one of the cell phones on this account, for example, and they do not
   answer the call, it goes to their voicemail, that is not something that you would see on
   this bill.
**Q:**  So if you call the Verizon cell phone and get a voicemail and let's say you leave a
    voicemail for two minutes, the owner of the phone is not charged for that?
**A**:  Correct . However, if they retrieve their voicemail and use airtime to do so, that is a

---

*Sweden Jewelers, Inc. v. 101 VT, Inc*., 2012 U.S. Dist. LEXIS 85663, 17-18 (W.D. Mich. June 21, 2012 1843253, *2 (W.D. Mo. May 11, 2011) (holding "[a] violation occurs when the prohibited fax is sent"); *Hinman v. M & M Rental Ctr., Inc.*, 545 F. Supp. 2d 802, 805 (N.D. Ill. 2008); *accord, Eclipse Mfg. Co. v. M & M Rental Ctr., Inc.*, 521 F. Supp. 2d 739, 745 (N.D. Ill. 2007); *Display South, Inc. v. Express Computer Supply, Inc.*, 961 So.2d 451, 455 (La. App. 1st Cir.2007); *Targin Sign Systems, Inc. v. Preferred Chiropractic Center, Ltd.*, 679 F. Supp. 2d 894, 898-899 (N.D. Ill. 2010); *Critchfield Physical Therapy v. Taranto Group, Inc.*, 263 P.3d 767,778-79 (Kan. 2011); *Clearbrook v. Rooflifters, LLC*, 08 C 3276, 2010 U.S. Dist. LEXIS 65128, 2010 WL 2635781, at *3 (N.D. Ill. June 28, 2010); *Saf-T-Gard Int'l, Inc. v. Wagener Equities,Inc.*, 251 F.R.D. 312, 314-15 (N.D. Ill. 2008); *Collins v. Locks & Keys of Woburn, Inc.*, No.2007-04207-BLS2, at 9, 2009 TCPA Rep. 1936 (Mass. Super. May 11, 2011); *see Fun Servs. Of Kan. City, Inc. v. Love*, No. 11-0244-CV-W-ODS, 2011 U.S. Dist. LEXIS 52011, 2011 WL1843253, *2 (W.D. Mo. May 11, 2011).

billable call.
**Q:** So a call to the voicemail is then billable?
**A:** Correct .
**Q:** What about for when you make a call to someone from your Verizon cell phone and it is the same thing, you would go to the voicemail and does that reflect as an outgoing call for you?
**A:** Yes.
**MR . HANSEN**:  I have nothing further.
**MR . MAURO** :  One clarification, these records do not contain all telephone calls that were made to these numbers for the time period reflected in each record, correct?
**THE WITNESS**: Correct.   **(Verizon Depo. pages 18-19)**

Defendant admits to making the calls in question; their own notes show each call. For the purposes TCPA liability that is all that matters. In any event, the Plaintiffs testimony shows that they received the calls. **(Plaintiffs Affs.)**  The phone rang each time the Defendant called, and the Plaintiffs heard it ring. Each time the Defendant called (550 times in all), the phone rang, and invaded the Plaintiffs' privacy.  Each of the 34 calls Defendant admittedly made with their auto-dialer to 845-536-9192 invaded the Plaintiff's privacy and violated the TCPA.

### ii. <u>Plaintiff Need Not Be Charged for the Call to Establish Violation</u>

As a matter of statutory construction, and in considering Congressional intent, it is beyond cavil that Plaintiff need not incur charges for the illegal calls in order to establish a violation of the TCPA.  The Court in  *Silbaugh v. Viking Magazine Servs*., 278 F.R.D. 389, 393 (N.D. Ohio 2012) recently summed up this issue:

> **…every court examining the pertinent language of the TCPA has concluded that a plaintiff does not have to prove that he was charged for a call to state a claim under the TCPA.** [8]

_____

[8]  As noted in *Silbaugh*, every Court that has addressed Defendant's argument has rejected such: *Torres v. Nat'l Enter. Sys.*, 2012 U.S. Dist. LEXIS 110514 (N.D. Ill. Aug. 7, 2012); *Martin v. Leading Edge Recovery Solutions*, LLC, 2012 U.S. Dist. LEXIS 112795, 17-18 (N.D. Ill. Aug. 10, 2012); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 729 (S.D. Tex. 2011); *Buslepp v. Improv Miami, Inc*., 2012 U.S. Dist. LEXIS 62489, 4-5 (S.D. Fla. May 4, 2012); *Abbas v. Selling Source, LLC,* 2009 U.S. Dist. LEXIS 116697, 6-7 (N.D. Ill. Dec. 14, 2009); *Lozano v. Twentieth Century Fox Film Corp*., 702 F. Supp. 2d 999, 1010 (N.D. Ill. 2010); *Mitchem v. Ill. Collection Serv*., 2010 U.S. Dist. LEXIS 76581 (N.D. Ill. July 30, 2010); *Kane v.*

As a matter of statutory construction, and recognizing that the purpose of the TCPA is to protect privacy, Courts have <u>unanimously</u> held that the statute does not require Plaintiffs be charged for a call in order to establish liability.  The relevant portion of the statute states that it is illegal to make automated calls to:

> any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call[.]" 47 U.S.C. § 227(b)(1)(A)(iii).

Every court that has analyzed this question has agreed the phrase "**for which the called party is charged for the call"** modifies the phrase **"other service"** only.  It <u>does not</u> modify the entire preceding list. [9]  To read the provision otherwise would violate the statutory construction rule of "last antecedent", meaning that, "a limiting clause or phrase ... should ordinarily be read as modifying only the noun or phrase that it immediately follows." *United States v. Hayes*, 129 S. Ct. 1079, 1086 (U.S. 2009).   Also, as noted above, one of the stated purposes of the TCPA was to prevent the invasion of privacy and nuisance resulting from automated calls to cell phones. *Mims v. Arrow Fin. Servs. LLC*, 132 S. Ct. 740, 745 (U.S. 2012); *Meyer v. Portfolio Recovery Assocs., LLC*, 696 F.3d 943, 951 (9th Cir. Cal. 2012); and See **Section III A**. above.

Additionally, the FCC has specifically ruled that: "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used").  *In re Rules Implementing the Tel. Consumer Prot. Act of 1991*, 23 FCC Red 559, 562 (F.C.C. 2007);

*Nat'l Action Fin. Servs.*, 2011 U.S. Dist. LEXIS 141480, 21-22 ( E.D. Mich. Nov. 7, 2011); *Gutierrez v. Barclays Group*, 2011 U.S. Dist. LEXIS 12546 (S.D. Cal. Feb. 9, 2011); *Smith v. Microsoft Corp.*, 2012 U.S. Dist. LEXIS 101197, 13-15 (S.D. Cal. July 20, 2012); *Silbaugh v. Omni Credit*, 2012 U.S. Dist. LEXIS 11175 (D. Md. Jan. 31, 2012).

[9] See ; *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1010 (N.D. Ill. 2010); *Abbas v. Selling Source, LLC,* 2009 U.S. Dist. LEXIS 116697, 6-7 (N.D. Ill. Dec. 14, 2009); *Kane v. Nat'l Action Fin. Servs.*, 2011 U.S. Dist. LEXIS 141480, 21-22 ( E.D. Mich. Nov. 7, 2011); *Gutierrez v. Barclays Group*, 2011 U.S. Dist. LEXIS 12546 (S.D. Cal. Feb. 9, 2011).

*Mitchem v. Ill. Collection Serv*., 2010 U.S. Dist. LEXIS 76581 (N.D. Ill. July 29, 2010); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 729 (S.D. Tex. 2011).

### iii. Predictive Dialers are "Automatic Telephone Dialing Systems"

Defendant admits that the machine they used to place the 34 calls to the Plaintiff's cellular phone is a "predicative dialer."  The FCC has very clearly ruled that predictive dialers are "automatic telephone dialing systems" and are subject to the TCPA restrictions.  [10] As the Court in *Meyer v. Portfolio Recovery Assocs., LLC*, 2012 U.S. App. LEXIS 26708, 11-12 (9th Cir. Cal. Dec. 28, 2012)  recently noted:

> The FCC further defined "automatic telephone  dialing system" to include predictive dialers. See In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991, 18 FCC Rcd. 14014, 14091-93 (July 3, 2003). "[A] predictive dialer is equipment that dials numbers and, when certain computer software is attached, also assists telemarketers in predicting when a sales agent will be available to take calls. The hardware, when paired with certain software, has the capacity to store or produce numbers and dial those numbers at random, in sequential order, or from a database of numbers." Id. at 14091. "As one commenter points out, the evolution of the teleservices industry has progressed to the point where using lists of numbers is far more cost effective. The basic function of such equipment, however, has not changed — the capacity to dial numbers without human intervention." Id. at 14092. PRA's predictive dialers fall squarely within the FCC's definition of "automatic telephone dialing system."

Defendant herein admits that they used a predictive dialer to make the 34 phone calls at issue:

**Q**  So is there a -- okay. With respect to the calls that were made , the 36 calls that were
    made with the auto dialer to the cell phones --withdrawn .With the -- with respect to any calls

---

[10] Also See: *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-639 (7th Cir. Ill. 2012): *Griffith v. Consumer Portfolio  Serv*., 2011 U.S. Dist. LEXIS 91231 (N.D. Ill. Aug. 16, 2011); *Hicks v. Client Services, Inc*., 2009 WL 2365637 (S.D.Fla. June 9, 2009); *Rivas v. Receivables Performance Mgmt., LLC*, 2009 U.S. Dist. LEXIS 129378, 12-13 (S.D. Fla. Sept. 1, 2009); *Frydman v. Portfolio Recovery Assocs., LLC*, 2011 U.S. Dist. LEXIS 69502 (N.D. Ill. June 28, 2011); *Vance v. Bureau of Collection  Recovery LLC*, No. 10-06324, 2011 U.S. Dist. LEXIS 24908 at *6 -7 (N.D.Ill., March 11, 2011);  *Lozano v. Twentieth Century Fox Film Corp*., 702 F. Supp. 2d 999, 1010-1011 (N.D. Ill. 2010); *Robinson v. Midland Funding, LLC*, 2011 U.S. Dist. LEXIS 40107, 15-16 (S.D. Cal. Apr. 13, 2011)**;** *Tovar v. Midland Credit Mgmt*., 2011 U.S. Dist. LEXIS 40103, 12-13 (S.D. Cal. Apr. 13, 2011);  *Joffe v. Acacia Mtg Corp*., 121 P.3d 831, 839 ( Ariz. App. 2005); *Kazemi v. Payless Shoesource, Inc*., 2010 U.S. Dist. LEXIS  27666 (N.D. Cal. Mar. 12, 2010); *Hickey v. Voxernet LLC*, 2012 U.S. Dist. LEXIS 125473, 6-7 (W.D. Wash. Aug. 13, 2012); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 729-730 (S.D. Tex. 2011).

that were made with the auto dialer to the Castros , how do -- how does that process work? How did the auto dialer determine to place those calls?

**A** I' m not sure I understand your question .

**Q** Okay .

**A** There's an algorithm, and somebody programs that auto dialer to dial . We have individual fields that we put phone numbers into and into our computer system. We put a home number and a work number. And that -- somebody tells that auto dialer to dial one or the other number in a particular run .

**Q** Okay . And is that -- is that direction to the auto dialer, is that done daily?

**A** I don' t know. I don' t know. I don' t run the auto dialer. I can't -- I can't answer that.

**Q** Is it a predictive dialer?

**A** I believe it is a predictive dialer .

**Q** Okay .

**A** And by predictive, my understanding is it knows how many people are available to answer the call and it feeds them the calls at a certain rate based on how quickly they' re answering it or not answering it.

**Q** And that' s the predictive dialer that made the 36 calls that we marked on the exhibit?

**A** Yes, sir .

**(30b(6) page 18-20)**

In addition, the Plaintiff's expert has confirmed that the calling system used by Defendant

is a predictive dialer. **See Exhibit C.** [11]

## IV.  Defendant's Affirmative Defense of "Prior Express Consent"

The Defendant can avoid liability under 47 U.S.C. § 227(b)(1)(A)(iii) by proving that the

Plaintiff gave the defendant "express consent" to call the cell phone with an automatic telephone

dialing system. *Bates v. I.C. Sys.*, 2009 U.S. Dist. LEXIS 96488 (W.D.N.Y. Oct. 19, 2009).

Proving express consent is an affirmative defense under the statute, and Defendant bears the

burden of establishing such. [12]

---

[11] Also **see Exhibit G**, Deposition of Defendant employee Tammy Beatty, page 60; and **Exhibit H**, Deposition of Defendant employee Brenda Becker page 202-203, confirming use of the dialer.

[12]  See: *Grant v. Capital Mgmt. Servs., L.P.*, 449 Fed. Appx. 598, 600 (9th Cir. Cal. 2011) ("'express consent' is not an element of a TCPA plaintiff's prima facie case, but rather is an affirmative defense for which the defendant bears the burden of proof. See 23 F.C.C.R. 559, 565 (Dec. 28, 2007) ("[W]e conclude that the creditor should be responsible for demonstrating that the consumer provided prior express consent."); *Bates v. I.C. Sys.*, 2009 U.S. Dist. LEXIS

Defendant attempts to meet their burden by claiming that Plaintiffs expressly consented to Defendant robo-calling them "by using their cell phones to initiate contact with the defendants." **(Defendant's Memo page 3)** Defendant claims to have captured Plaintiffs' number with their Caller ID machines, and relied on this as consent. Defendants' theory fails as a matter of law. It is well settled that capturing a consumers' cell phone number with a Caller ID does not give Defendant "express consent" to robo-dial Plaintiff. *1992 TCPA Order*, 7 FCC Rcd at 8769, para. 31 (citing House Report, 102-317, 1st Sess., 102nd Cong.(1991) at 13; also see *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 731 (S.D. Tex. 2011).

## A. <u>Meaning of "Express Consent"</u>

Express consent under the TCPA is "[c]onsent that is clearly and unmistakably stated." Black's Law Dictionary 323 (8th ed. 2004). *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 955 (9th Cir. Cal. 2009) The Court in *Edeh v. Midland Credit Mgmt*., 748 F. Supp. 2d 1030, 1038 (D. Minn. 2010) stated:

> Midland's call to Edeh's cellular phone was permissible only if it was made "with [Edeh's] prior express consent." 47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added). "Express" means "explicit," not, as Midland seems to think, "implicit." Midland was not permitted to make an automated call to Edeh's cellular phone unless Edeh had previously said to Midland (or at least to Midland's predecessor in interest) something like this: "I give you permission to use an automatic telephone dialing system to call my cellular phone." Midland has no evidence that Edeh gave such express consent.

In, *Leckler v. Cashcall, Inc*., 554 F. Supp. 2d 1025, 1030 (N.D. Cal. 2008) ("*Leckler I*" reversed for lack of jurisdiction by, 2008 U.S. Dist. LEXIS 97439), the Court analyzed the meaning of the "express consent" under the TCPA:

---

96488 (W.D.N.Y. Oct. 19, 2009).*Thrasher-Lyon v. Ill. Farmers Ins. Co.*, 2012 U.S. Dist. LEXIS 50560, 9-10 (N.D. Ill. Mar. 20, 2012); *D.G. v. Diversified Adjustment Serv., Inc.*, No. 11-2062, 2011 WL 5506078, at *3 (N.D. Ill. Oct. 18, 2011); *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716 (S.D. Tex. 2011); *Martin v. Bureau of Collection Recovery*, No. 10-7725, 2011 WL 2311869, at *1 (N.D. Ill. June 13, 2011).

Black's Law Dictionary defines "express consent" as "[t]hat directly given, either viva voce or in writing. It is positive, direct, unequivocal consent, requiring no inference or implication to supply its meaning." Black's Law Dictionary 276 (5th ed.1979). Similarly, it defines "express" as "[c]lear. Definite. Explicit. . . . Declared in terms; set forth in words. . . . Manifested by direct and appropriate language, as distinguished from that which is inferred from conduct." Id. at 521. By contrast, "implied consent" is defined as "[t]hat manifested by signs, actions, or facts, or by inaction or silence, which raise a presumption that the consent has been given." Id. at 276. Although the Court does not doubt that by providing her cell phone number on her loan application and in subsequent correspondence plaintiff consented to be called by defendant, such consent was implied through her actions and conduct, i.e. writing down her cell phone number in a space labeled for such information, rather than expressly given in words or "direct and appropriate language" explicitly stating that plaintiff consented to be called with an auto-dialer or prerecorded message. [13]

**B. Must be Express Consent** *to Be Robo-called*

Additionally, the "express consent" that a consumer must give is the consent to be called by an auto-dialer. *Thrasher-Lyon v. CCS Commer.*, LLC, 2012 U.S. Dist. LEXIS 125203, 16-17 (N.D. Ill. Sept. 4, 2012) The TCPA does not prohibit *manually made* calls to cell phones, so no consent for such is necessary. *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 642 (7th Cir. Ill. 2012) (noting debt collectors don't need consent to call cell phones manually).  It is only the automated process of calling cell phones that is prohibited, so it is obviously this to which the consumer must expressly consent. *Thrasher-Lyon,* 16-17 (N.D. Ill. Sept. 4, 2012); *Leckler v. Cashcall, Inc*., 554 F. Supp. 2d 1025, 1030 (N.D. Cal. 2008); *Edeh v. Midland Credit Mgmt*., 748 F. Supp. 2d 1030, 1038 (D. Minn. 2010)(describing express consent as saying: "I give you permission to use an automatic telephone dialing system to call my cellular phone.")

**C. There is No Evidence of Consent**

---

[13]  Also see: *Thrasher-Lyon v. CCS Commer., LLC*, 2012 U.S. Dist. LEXIS 125203 (N.D. Ill. Sept. 4, 2012) ("One 'expresses' consent by, well, expressing it: stating that the other party can call, or checking a box on a form or agreeing to terms of service that explicitly permit automated telephone contact."); *Weitzner v. Iridex Corp*., 2006 U.S. Dist. LEXIS 44317, 12-13 (E.D.N.Y. June 29, 2006) and *Gottlieb v. Carnival Corp*., 595 F. Supp. 2d 212, 221-222 (E.D.N.Y. 2009) (both analyzing "express consent" in similar circumstance under the TCPA).

Plaintiffs did not consent in any manner to be called on their cell phones. **(Plaintiffs'**

**Affs.)**  Defendant has not presented **ANY** evidence of consent whatsoever, because there is no

evidence of consent.  The only argument Defendant makes relates to Defendant capturing the

Plaintiff's cell phone number with their Calller ID.  Defense counsel's memo of law assigns

significance to the fact that Plaintiffs used their cell phone to call Defendant. Defendant is

arguing that Plaintiff calling from a cell phone somehow granted Defendant "express consent" to

put the Plaintiffs' cell phone onto their automatic dialer. The TCPA law is clear however that

that is *legally insufficient* to establish express consent.

In 1992 the FCC specifically ruled that capturing a consumer's telephone number via

Caller ID is not a basis for a company to deem that consumer to have consented to robo-calls.

*1992 TCPA Order*, 7 FCC Rcd at 8769, para. 31 (citing House Report, 102-317, 1st Sess., 102nd

Cong.(1991) at 13; also see *Lee v. Credit Mgmt., LP*, 846 F. Supp. 2d 716, 731 (S.D. Tex. 2011).

In 2008 the FCC reiterated this position: *In re Rules Implementing the Tel. Consumer Prot. Act*

*of 1991*, 23 FCC Rcd 559, 564 (F.C.C. 2007): [14]

>  The Commission also noted, however, that if a caller's number is "captured" by a Caller
> ID or an ANI device without notice to the residential telephone subscriber, the caller
> cannot be considered to have given an invitation or permission to receive autodialer or
> prerecorded voice message calls.

The FCC Regulations and case law make perfect sense. There is no logic to Defendants'

argument. Plaintiff choosing to place a phone call to the Defendant from a certain number does

not implicate the use of a robo-dialer in any manner. And it certainly could not be seen to be

---

[14]   The FCC Orders regarding the TCPA have been afforded great deference, and have
been viewed as effectively mandatory authority. *See Thrasher-Lyon v. CCS Commer. LLC*, 2012
U.S. Dist. LEXIS 157230 (N.D. Ill. Nov. 2, 2012); *Leckler v. Cashcall, Inc.*, 2008 U.S. Dist.
LEXIS 97439 (N.D. Cal. Nov. 21, 2008).

"*express consent*" to be robo-called.[15]   Defendant does not have any evidence that the Plaintiffs

consented to be called on their cellular phone by the Defendant's robo-caller.

## V.  TCPA Damages

The TCPA provides a private right of action and permits a successful

Plaintiff to recover actual monetary loss for a violation of § 227(b)(1)(A). The TCPA provides

that a Plaintiff shall receive actual damages for such violations "or $500 in damages for each

such violation, whichever is greater." 47 U.S.C. §227(b)(3)(B); *Mims v. Arrow Financial*

*Services, LLC*, 132 S.Ct. 740, (2012).  The award of $500.00 per violation is a mandatory floor.

*Charvat v. NMP, LLC*, 2012 U.S. Dist. LEXIS 139505 (S.D. Ohio Sept. 27, 2012). [16]

---

[15] Calling Defendant from a cell phone is not even ***implied*** consent to be robo-called. In *Schnabel v. Trilegiant Corp.* 2012 U.S. App LEXIS 18875 (2d Cir. 2012), the Circuit recently analyzed the elements of "implied consent."  The Court ruled that before a person can be said to have given even "implied consent" that person must have knowledge of the relevant facts, and must have known that their actions could be construed as giving consent.  This makes perfect sense. A person should not be deemed to consent to something that they don't know about. In the instant matter,  Defendant wants the Court to rule that Plaintiff gave "**express** consent," to be robo-dialed by calling Defendant from his cell phone.  But that is not even ***implied*** consent, as Plaintiff could not be deemed to "know" whether the Defendant is going to use Caller ID equipment to capture his number and put it on their robo-dialer. In fact, a consumer should assume that debt collector would NOT do such a thing because that's illegal under the FCC Rules. In fact, at one point, Defendant alleges that the only reason it happened here was because Defendant Smith made an error. (**Defendant's Memo. Page 3**)  In any event, capturing a person's cell phone number through the use of Caller ID equipment is certainly not "**express** consent" to be robo-called.   [Also, the Court should recall that the Defendant has outright admitted they don't even know how they obtained the Plaintiffs' cell phone number. (**30b(6), pages 243-245**). So any "reliance" argument, even if it *was* legally sufficient would be complete speculation, and thus insufficient to meet Defendants burden of proof. See *St. Paul Mercury Ins. Co. v. Pepsi-Cola Bottling Co. of N.Y., Inc*., 2007 U.S. Dist. LEXIS 56884 (E.D.N.Y. 2007)]

[16] Also see*: First Nat'l Collection Bureau, Inc. v. Walker*, 348 S.W.3d 329, 346 (Tex. App. Dallas 2011); *Fillichio v. M.R.S. Assocs*., 2010 U.S. Dist. LEXIS 112780, 11-13 (S.D. Fla. Oct. 19, 2010); *Chair King, Inc. v. Houston Cellular Corp*. 1995 WL 1693093 (S.D. Tex. Nov. 2, 1995); *Kopff v. Roth*, 2007 U.S. Dist. LEXIS 43702 (D.D.C. June 15, 2007);  *Bransky v. Shahrokhi*, 2005 Ohio 97 (Ohio Ct. App., Cuyahoga County Jan.13, 2005).

The TCPA is a strict liability statute. No intent need be shown to establish a violation. *Alea London Ltd. v. American Home Services, Inc.,* 638 F.3d 768, 776 (11 Cir. 2011) (quoting P*enzer v. Transp. Ins.Co.,* 545 F.3d 1303, 1311 (11th Cir. 2008)*); Harris v. World Fin. Network Nat'l Bank*, 2012 U.S. Dist. LEXIS 46882, 8-9 (E.D. Mich. Apr. 3, 2012  ) [17]

In addition the TCPA permits up to another $1,000.00 if the violation is deemed "willful or knowing" under the statute." See, 47 U.S.C. §227(b);  *Harris v. World Fin. Network Nat'l Bank*, 2012 U.S. Dist. LEXIS 46882, 8-9 (E.D. Mich. Apr. 3, 2012). [18]

## A. **"Willful or Knowing" Standard Under the TCPA**

Court's are split on the exact meaning "willful or knowing" as contained in the TCPA. *Sengenberger v. Credit Control Servs.*, 2010 U.S. Dist. LEXIS 142528, 3-4 (N.D. Ill. June 17, 2010).   Under one approach the Defendant need only intend to make the calls to the specific number using their auto-dialer. *Sengenberger, v. Credit Control Services, Inc.*, 2010 WL 1791270 (N.D.Ill. May 05, 2010); *Stewart v. Regent Asset Management Solutions*, 2011 WL 1766018 (N.D. Ga. May 4, 2011); *Charvat v. Ryan*, 116 Ohio St. 3d 394, 398 (Ohio 2007). Under the other approach a defendant must have known about the TCPA prohibitions at issue before making the call. See *Texas v. American Blastfax, Inc.*, 164 F.Supp.2d 892, 899–901 (W.D.Tex.2001); *Stern v. Bluestone*, 2008 NY Slip Op 611 (N.Y. App. Div. 1st Dep't 2008, reversd. on other grounds by 12 NY3d 873 (2009); *Kaplan v. First City Mortg.* 183 Misc.2d 24 (NY City Ct. 1999). [19]

---

[17]   Also see: *Melrose Hotel Co. v. St Paul Fire and Marine Ins. Co*., 432 F.Supp.2d 488, 2006 TCPA Rep. 1640 (E.D.Pa. Apr. 19, 2006); *Park University Enterprises, Inc. v American Casualty Company of Reading, PA*, 314 F. Supp 2d 104  (D. Kansas 2004).

[18] Also see: *First Nat'l Collection Bureau, Inc. v. Walker*, 348 S.W.3d 329, 346 (Tex. App. Dallas 2011); *Stewart v. Regent Asset Mgmt. Solutions*, 2011 U.S. Dist. LEXIS 50046, 19-20 (N.D. Ga. May 4, 2011)

[19]   The first approach, that of only requiring that Defendant know they were making the call, appears to be better approach as it is based solidly on statutory and U.S. Supreme Court

## B. Defendants Acted Willfully or Knowingly

Under either standard the Defendants acted willfully or knowingly.  Defendant has testified that they have known about the TCPA since 2004 and have an entire "compliance department" that assures that the Defendant remains up to date with TCPA law and regulations. **(30b(6), page 115-121)**    Defendants _knew_ that the 845-536-9192 was a cellular phone as of September 29, 2009; their own notes show such and Defendant admits this. **(30b(6), page 244-245)**  Defendant also admitted at deposition that they knew that it was illegal to call Plaintiff's cellular phone with their robo-dialer. **(30b(6), page 128**)  Additionally, the Defendant continued to call the Plaintiff despite the Plaintiffs demands that they stop. **(Plaintiffs Affs.)**  This appears to be part of the Defendant's normal business plan, and not some inadvertent "error" as claimed. Attached as **Exhibits I, and J** are depositions of other consumers harassed in the same manner. Attached as **Exhibit K** is a list provided by Defendant during this lawsuit that shows state lawsuits brought against Green Tree alleging debt collection harassment. [20]   Defendants' suggestion that Defendant Kevin Smith just made an honest mistake is completely belied by the additional facts and circumstances of the case. [21] The Defendant debt collectors called the Plaintiffs approximately 550 times; called their neighbors; threatened to continue to call their neighbors; and threatened to foreclose on the Plaintiff's house.  It would certainly be within the jury's discretion to conclude that Smith purposefully put Plaintiff's cell phone number onto their

---

authority. See _Charvat_, 116 Ohio St. 3d 394, 398 (Ohio 2007); and _Sengenberger,_ 2010 U.S. Dist. LEXIS 142528, 3-4 (N.D. Ill. June 17, 2010).

[20]    Additionally, a search of the Federal Court system through Pacer shows 414 lawsuits involving Green Tree, the large majority in which Green Tree is defendant. Many of which involve debt collection harassment.

[21]    Defendant's suggestion that they have a policy against what they did here, proves nothing. See: _Caton v. Green Tree Servicing, L.L.C._, 2008 U.S. Dist. LEXIS 5778, 6-7 (N.D. W. Va. Jan. 25, 2008) ("Court finds that the fact that a company has a policy does not controvert testimony that an event happened. Accordingly, Green Tree's motion will be denied, and the plaintiffs' motion will be granted.")

robo-dialer as part of his orchestrated campaign of abuse and harassment. In any event, this is an

issue of Smith's credibility.  Mr. Smith is a convicted felon who has admitted that after being

released from 5 years in prison, he lied about his criminal history to get hired by Green Tree.

**(Smith Depo, page 5, 202-203, attached as Exhibit D)**    This goes directly to Smith's

credibility. Additionally, after being sued in this action, Green Tree directed their attorneys to

file an answer for Kevin Smith denying Plaintiff's allegations despite the fact that Smith was no

longer employed at Green Tree, and despite the fact that nobody had ever asked Kevin Smith

what happened. (**Smith Depo. page 28-30;  30b(6) depo.,  pages 25, 39-40; and Answer of**

**Kevin Smith, Exhibit E**)   By covering up for a Kevin Smith in this manner, Green Tree clearly

ratified Smith's conduct. *IBJ Schroder Bank & Trust Co. v. Resolution Trust Corp*., 26 F.3d 370,

375 (2d Cir. N.Y. 1994). [22] Additionally, Defendants' own arguments in this litigation (indeed in

this very motion) indicate that they don't see anything wrong with capturing a Plaintiff's cellular

phone via Caller ID and putting it onto their dialer. (**Defendant's Memo, page 8**)   Defendants

argue this despite their knowledge that the FCC regulations prohibit such.  This is clearly willful

and knowing conduct.

   The amount of the additional TCPA damages (up to $1,000.00 per call) based on the

Defendant's "willful or knowing" conduct is a question that should be decided by the jury.

## VI.   Fair Debt Collection Practices Act Does NOT Cap Actual Damages

   It is beyond cavil that in the FDCPA provides for actual damages for "out of pocket

expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that

---

[22] Also see: *In re S. African Apartheid Litig.*, 633 F. Supp. 2d 117, 121-122 (SDNY 2009); *Seymour v. Summa Vista Cinema*, 809 F.2d 1385, 1388 (9th Cir. Cal. 1987).

results from defendant's failure to comply with the FDCPA." *Smith v. Law Offices of Mitchell N. Kay*, 124 B.R. 182, 185 (D. Del. 1991). [23]

In *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939, 957 (9th Cir. Mont. 2011), the 9th Circuit recently upheld a $250,000 jury verdict for actual damages under the FDCPA based upon the following jury charge:

> Actual damages include damages for personal humiliation, embarrassment, mental anguish and emotional distress. There is no fixed standard or measure in the case of intangible items such as humiliation, embarrassment, mental anguish or emotional distress. Mental and emotional suffering and distress pass under various names such as mental anguish, nervous shock and the like. It includes all highly unpleasant mental reactions such as fright or grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea. The law does not set a definite standard by which to calculate compensation for mental and emotional suffering and distress. Neither is there any requirement that any witness express an opinion about the amount of compensation that is appropriate for the kind of law.  The law does require, however, that when making an award for mental and emotional suffering and distress you should exercise calm and reasonable judgment. The compensation must be just and reasonable.

In *Fausto v. Credigy Services Corp.*, 598 F. Supp. 2d 1049 (N.D. Cal. 2009), the court denied the debt collector's motion for summary judgment regarding actual damages, and the jury awarded a husband and wife $50,000 each in actual damages for emotional distress.[24]

Plaintiffs are entitled to a jury determination of their damages.  *AMW Materials Testing, Inc. v. Town of Babylon*, 584 F.3d 436, 451 (2d Cir. N.Y. 2009)["The Seventh Amendment affords a right to trial by jury in civil cases arising in law rather than equity. See U.S. Const. amend. VII; *City of Monterey v. Del Monte Dunes at Monterey, Ltd.*, 526 U.S. 687, 708-09, 119 S. Ct. 1624, 143 L. Ed. 2d 882 (1999)]. [25] also see *Sibley v. Fulton Dekalb Collection Service*, 677 F.2d 830, 832-833 (11th Cir. Ga. 1982)(noting that "court" as used in a statute encompasses

---

[23] *Panahiasl v. Gurney*, 2007 U.S. Dist. LEXIS 17269 (N.D. Cal. Mar. 7, 2007); *Teng v. Metropolitan*, 851F. Supp. 61, 68-69 (E.D.N.Y. 1994).
[24] The jury also awarded 400,000 in punitive damages against the debt collector for approximately l00 calls.
[25]

both judge a and jury, compiling cases); *Kobs v. Arrow Serv. Bureau, Inc.* 134 F. 3d 893 (7th Cir

1998) (ruling plaintiff has right to jury on damages under FDCPA); and *Macheda v. Household*

*Fin. Realty Corp.,* 2009 U.S. Dist. LEXIS 2903 (N.D. N.Y Jan. 15, 2009)(noting constitutional

and precedential problems with denying a Plaintiff a jury).  A summary determination of

Plaintiffs' damages would be improper. [26]    Likewise, Plaintiff respectfully suggests that it

would be improper for the Court to impose any sort of a cap on actual damages, when Congress

chose not to do so.  Congress capped the statutory damages under the FDCPA at $1,000.00, but

chose not to impose any sort of cap on actual damages.

   Juries and Courts regularly award damages well in excess of $5,000 for emotional

distress damages caused by FDCPA violations, even when the consumer did not seek medical

attention.  In *Clodfelter v. United Prosessing, Inc.*, 2008 U.S. Dist. LEXIS 83791 (C.D. IL 2008),

the Court awarded $100,000 in for "garden variety" emotional distress caused by repeated

telephone calls in violation of the FDCPA. The Court stated:

> In this case, while Plaintiff's affidavit includes conclusory statements that he was "sick,"
> "worried" and "embarrassed," it also set out in detail United Processing's actions in
> contacting family members and an employer and stating that Plaintiff would be
> criminally prosecuted and arrested for failing to pay a debt. This court concludes that
> Plaintiff's affidavit sufficiently shows actions that are so "inherently degrading" that this
> court can reasonably infer that Plaintiff suffered emotional distress from United
> Processing's actions.

   In another FDCPA case the court awarded on Plaintiff $50,000 in damages, based on

declarations of the plaintiff and a co-worker, attesting to the distress suffered as a result of the

---

[26]  Also see following FDCPA cases: *Ortega v. Collectors Training Inst. of Ill., Inc.*, 2011
U.S. Dist. LEXIS 6282, 19-21 (S.D. Fla. Jan. 21, 2011)("There are genuine issues of material
fact regarding the emotional distress claimed as actual damages by p. Further, the determination
of damages is not suitable for this summary judgment stage.") and  *Hebert v. Fortune Portfolio
Processor*, 2011 U.S. Dist. LEXIS 50330 (S.D. IL 2011)(ordering FDCPA jury trial, Court ruled:
"It is difficult, if not impossible, to currently gauge the extent of Fortune's liability, especially
with respect to actual and statutory additional damages.")

debt collector's repeated telephone calls. *Panahiasl, et al. v. Gurney, et al.*, 2007 U.S. Dist. Lexis

17269 (N.D. Cal 2007).  The court stated, "Plaintiff Jeannie Panahiasl was subjected to abusive

debt collection practices, including repeated telephone abuse, and suffered emotional distress,

including: embarrassment, fear, anger, panic, humiliation, nervousness, crying fits, difficulty

eating and sleeping, and diarrhea."  In "garden variety" FDCPA damage case the Court in

*Brablec v. Coleman & Assoc.*, 2010 U.S. Dist. LEXIS 4500 (E.D. Cal. 2010) noted:

> Plaintiff states that as a result of defendant's harassing phone calls to both his home and
> his work, as well as threats to garnish his wages, plaintiff suffered heart problems, high
> blood pressure, sleep loss, fatigue, loss of concentration, poor work performance, stress,
> anxiety, depression, and fear of leaving his house. (Id.) The requested amount of $ 25,000
> is reasonable under these circumstances.

Analyzing the meaning of "garden variety" emotional distress, the Second Circuit in *Lore*

*v. City of Syracuse*, 670 F.3d 127, 177-178 (2d Cir. N.Y. 2012), recently noted:

> Neither cases arising under federal law nor those arising under state law provide a clear
> line as to whether an award of $150,000 for emotional distress on the basis of a trial
> record such as that created in the present case deviates so materially from what would be
> reasonable compensation as to shock the judicial conscience. This Court has, however,
> affirmed awards of $125,000 each to plaintiffs for emotional distress resulting from age
> discrimination where the evidence of emotional distress consisted only of "testimony
> establishing shock, nightmares, sleeplessness, humiliation, and other subjective distress,"
> as well as awards of $175,000 each where in addition there were "either physical
> sequelae"--i.e., secondary physical results or consequences--"or professional treatment,"
> *Meacham v. Knolls Atomic Power Laboratory*, 381 F.3d 56, 77 (2d Cir. 2004)
> ("Meacham"), vacated and remanded for further consideration on other grounds, 544 U.S.
> 957, 125 S. Ct. 1731, 161 L. Ed. 2d 596 (2005); see id. at 77-78. In Meacham, in which
> the emotional distress damages were awarded under the HRL, **we rejected the**
> **defendant's contention that those damage awards, for "garden variety emotional**
> **distress claims," "should have been reduced to between $5,000 and $30,000,"** id. at
> 77.   We observed that:
>
> > New York cases vary widely in the amount of damages awarded for mental
> > anguish. Many do reduce awards to $30,000 or below. See, e.g., In re *Buffalo*
> > *Athletic Club*, 249  A.D.2d 986, 672 N.Y.S.2d 210, 21(1998);  [**114]  [*178] *In*
> > *re Manhattan and  Bronx Surface Transit Operating Auth*., 220 A.D.2d 668, 632
> > N.Y.S.2d 642, 644 (1995); *In re New York State Office of Mental Retardation and*
> > *Developmental  Disabilities*, 183 A.D.2d 943, 583 N.Y.S.2d 580, 582 (1992); In
> > re City of Fulton,  221 A.D.2d 971, 633 N.Y.S.2d 914, 915 (1995). However,

22

other cases uphold awards of more than $100,000 without discussion of protracted
suffering, truly egregious conduct, or medical treatment. See, e.g., *Rio Mar Rest.
v. NYSDHR*, 270 A.D.2d 47, 704 N.Y.S.2d 230, 231 (2000); In re Allender, 233
A.D.2d 153, 649 N.Y.S.2d 144, 145  (1996); *Boutique Indus., Inc. v. NYSDHR*,
228 A.D.2d 171, 643 N.Y.S.2d 986, 986  (1996). For truly egregious conduct with
severe and verified results on a complainant's mental and physical health, courts
have upheld awards far in excess of the amounts upheld here. See, e.g., *In re New
York City Transit Auth*., 181 A.D.2d 891, 581 N.Y.S.2d 426, 428-29 (1992). In
addition, the passage of time since the cited cases were decided could reasonably
support higher verdicts. When confronted with the range of mental anguish
verdicts approved under New York law, we do not find the verdicts in this case to
deviate substantially from verdicts awarded under similar circumstances.
*Meacham*, 381 F.3d at 78.   (**emphasis added**)  [27]


Plaintiffs herein suffered emotional distress with physical manifestations of such

distress. Such damages regularly support damage awards far exceeding the Defendant's proposed

cap in both FDCPA and other contexts. [28]   As noted in Mario Castro's deposition (**Exhibit P**)

and Supplemental interrogatory (**Exhibit N**) responses Mario experienced anxiety,[29]

----

[27] Also see:. *Turley v. ISG Lackawanna, LLC*, 2013 U.S. Dist. LEXIS 5395 (W.D.N.Y.
Jan. 11, 2013)("Garden variety" emotional distress claims "generally merit $30,000 to
$125,000")

[28] During the recent pre-motion conference Defense counsel argued that in the Southern
District of New York, actual damages under the FDCPA are capped at $5,000.  While Defendant
has not cited to anything establishing such, the Court should reject any attempt by Defendant to
"value" any of Plaintiffs' actual damages any differently because they occurred in the SDNY as
opposed to any other District in the United States. To do so would clearly run afoul of the
FDCPA's stated intention to create "consistent State action to protect consumers against debt
collection abuses." 15 USC 1692e.  Additionally, the Court should reject suggestions by Defense
counsel that symptoms of emotional distress due to violations of the FDCPA should be "valued" any
differently than those same symptoms due to violations of other statutes. The focus should obviously
be on the damage, not the statute violated. The damage is the same regardless of the cause.

[29] *McCollough v. Johnson, et al*., 637 F.3d 939 (9th Cir. 2011)(upholding $250,000 in
actual damages/emotional distress), *Fausto v. Credigy*, 598 F. Supp. 2d 1049 (N.D. Cal.
2009)(denying debt collector's motion for summary judgment regarding actual damages);
*Panahiasal v. Gurney*, 2007 U.S. Dist. LEXIS 17269, (N.D. Cal. 2007)(awarding $65,000 in
actual damages/emotional  distress); *Hunter v. Oasis Financial Solutions*, 2010 U.S. Dist. LEXIS
142175 (S.D. Cal. 2010)(awarding $75,000 in actual damages/emotional distress), *Greenpoint v.
Perez*, 75 S.W.3d 40 (Court of Appeals TX 2002)(awarding $5 million in damages); *Brablec v.
Coleman & Assoc*., 2010 U.S. Dist. LEXIS 4500 (E.D. Cal. 2010)(awarding $25,000 in actual
damages/emotional distress), *Sanchez v. Client Services, Inc.,* 520 F.Supp.2d 1149 (N.D. Cal.
2007)(granting Plaintiff's motion for summary judgment), *Young v. Bank of America*, 141 Cal.

headaches,[30] stomach problems,[31] diarrhea,[32] insomnia,[33] and stress.  Mario also experienced an

invasion of privacy,[34] embarrassment,[35] humiliation,[36] upset[37] and anger.[38] **(Plaintiffs Affs;**

**Exhibit N, Exhibit P)** Courts have recognized these harms as injuries under the FDCPA.

Plaintiff Krisber Castro's was pregnant during Green Tree's five hundred and fifty call

harassment campaign. She has testified through Interrogatories **(Exhibit O)** and deposition

**(Exhibit F)** that she has suffered from the following: anxiety, headaches, insomnia, stress,

invasion of privacy, embarrassment, humiliation, crying spells,[39] fear."[40] **(Plaintiffs Affs;**

**Exhibit F; and Exhibit O)**  Due to her pregnancy she was unable to take medication to deal

---

App. 3d 108 (1983), *Heib v. Arches Fin*., 2008 U.S. Dist. LEXIS 81107 (E.D. WA
2008)(awarding $157,000 in damages); *Sporn v. Home Depot*, 126 Cal. App. 4th 1294
(2005)(awarding $930,000 in damages).

[30] *McCollough v. Johnson*;  *Young v. Bank of America*;  *Howze v. Romano*, 1994 U.S.
Dist. LEXIS 20547 (D. DE 1994)(awarding $7,000 in damages).

[31] *Nelson v. Equifax Services, LLC*, 522 F. Supp. 2d 1222, 1239 (C.D. Cal.
2007)(awarding $86,000 in damages), *Passantino v. Johnson & Johnson*, 212 F.3d 493 (9th Cir.
2000)(upholding $3.4 million award in employment discrimination case).

[32] *Panahiasal v. Gurney,*  2007 U.S. Dist. LEXIS 17269, (N.D. Cal. 2007)(awarding
$65,000 in actual damages/emotional distress).

[33] *Fausto v. Credigy*; *Greenpoint v. Perez*; *Brablec v. Coleman*; *Sanchez v. Client
Services, Inc*., *Bennett v. Bay Area Credit*, 226 Fed. Appx. 725 (9th cir. 2007)(upholding
$100,000 actual damages, and suggesting $400,000 punitive damages).

[34] *Panahiasal v. Gurney*, 2007 U.S. Dist. LEXIS 17269, (N.D. Cal. 2007); *Brandt v. I.C.
System, Inc*., 2010 U.S. Dist. LEXIS 14588 (M.D. FL 2010).

[35] *Fausto v. Credigy*, *Greenpoint v. Perez*; *Panahiasal v. Gurney*; *Young v. Bank of
America*; *Howze v. Romano*, *Bennett v. Bay Area Credit; Sporn v. Home Depot*, *Clodfelter v.
United Prosessing, Inc.*, 2008 U.S. Dist. LEXIS 83791 (C.D. IL 2008)(awarding $350,000 in
actual and punitive damages).

[36] *Fausto v. Credigy, Panahiasal v. Gurney, Howze v. Romano, Lee v. Javitch*, 2008 U.S.
Dist. LEXIS 34166 (S.D. OH 2008)(awarding $44,000 in damages), *Young v. Bank of America.*

[37] *Strom v. National Enterprise Systems, Strom v. National Enterprise Systems*, 2011 U.S.
Dist. LEXIS 33659 (W.D. NY 2011)(denying debt collector's motion for summary judgment);
*Bennett v. Bay Area Credit.*

[38] *Panahiasal v. Gurney, Laufman Laufman v. Phillips & Burns, Inc*., 2008 U.S. Dist.
LEXIS 4304 (M.D. FL 2008)(denying debt collectors' motion for summary judgment), *Howze v.
Romano, Lee v. Javitch, Bennett v. Bay Area Credit.*

[39] Crying is also considered emotional distress under the FDCPA. *Fausto v. Credigy*,
*Panahiasal v. Gurney*, *Laufman v. Phillips & Burns*.

[40] Fear also considered emotional distress under the FDCPA. *Roberston v. Horton*, 2007
U.S. Dist. LEXIS 48602 (D. DE 2007), *Brablec, Sanchez v. Client Services*, *Howze v. Romano*.

with the stress Defendant caused her. *Id.*   Defendants take the Plaintiffs as they find them. The

jury may certainly consider Krisber Castro's emotional and physical condition due to her

pregnancy in reaching their verdict.. [41]

### Conclusion

Defendant is clearly not entitled to Summary Judgment. On the contrary, it is clear that

Plaintiff is entitled to Summary Judgment on their claims under the TCPA.  It is clear that Green

Tree used their predictive dialer to call the Plaintiffs' cell phone 34 times. Defendants admit

such. Defendant has produced no evidence to establish their affirmative defense of "express

consent."  The Court has the authority to enter summary judgment on the issue of TCPA liability

for these 34 calls. Once liability is established for these calls, Plaintiff is entitled to $500.00 for

each of the 34 calls.[42] The jury can then determine the amount of additional TCPA damages for

Defendant's knowing and willful violation of the statute (up to an additional $1,000.00 per call).

The Court should reject Defendant's request to have the Court a cap on FDCPA actual damages.

Congress imposed no such cap, and Defendant's request would violate Plaintiffs' right to a jury.


Dated: February 21, 2013
       West Islip, NY                         S/JOSEPH MAURO
                                              Joseph Mauro, Esq.
                                              306 McCall Ave.
                                              West Islip, NY 11795

---

[41]   *Bach v. First Union*, 2005 U.S. App. LEXIS 18197 *19 (6th Cir. 2005); *Frometa v. Diaz-Diaz,* 2008 U.S. Dist. LEXIS 100457, 11-12 (SDNY 2008); *Joseph v. J. J. Mac Intyre,* 238 F. Supp. 2d 1158, 1168 (N.D. Cal. 2002): *Lee v. Javitch, Block & Rathbone, LLP*, No. 06-585 2008 U.S. Dist. LEXIS 34166 *6 (S.D. Ohio, April 25, 2008); *Pierce v. Pierce v. Southern Pacific Transp. Co*., 823 F.2d 1366 (9th Cir. 1987)

[42]   Defendant is liable to both Plaintiffs for the violations of the TCPA as the calls were made to a phone paid for and used by both Plaintiffs; and both Plaintiffs had their privacy invaded in the manner the statute was intended to prevent. See *Swope v. Credit Mgmt*., 2013 U.S. Dist. LEXIS 21810 (D. Mo. 2013); *Page v. Regions Bank*, 2012 U.S. Dist. LEXIS 185440 (N.D. Ala. Aug. 22, 2012); *D.G. v. William W. Siegel & Assocs*., 791 F. Supp. 2d 622 (N.D. Ill. 2011); *Breslow v. Wells Fargo Bank, N.A*., 857 F. Supp. 2d 1316 (S.D. Fla. 2012); *Soppet v. Enhanced Recovery Co*., 2011 U.S. Dist. LEXIS 92888, 4-6 (N.D. Ill. Aug. 21, 2011).