USDC SDNY

DOCUMENT

ELECTRONICALLY FILED

DOC#_____

DATE FILED:  8/14/2013

SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

KRISBER CASTRO and MARIO CASTRO,          :
                                          :
                    Plaintiffs,           :
                                          :
        - against -                       :
                                          :
GREEN TREE SERVICING LLC and KEVIN SMITH, :
                                          :
                    Defendants.           :

------------------------------------------------------------------------x

**OPINION AND ORDER**
10-CV-7211 (ER)

Ramos, D.J.:

Plaintiffs Krisber and Mario Castro ("Plaintiffs" or the "Castros") commenced this action

against Defendants Green Tree Servicing LLC ("Green Tree") and Kevin Smith (collectively,

"Defendants") alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et

seq.* ("FDCPA"), and the Telephone Consumer Protection Act, 47 U.S.C. § 227. ("TCPA").

Amended Complaint ("Am. Compl.") ¶¶ 66-94 (Doc. 10.)  Before the Court are the parties'

cross-motions for summary judgment pursuant to Fed. R. Civ. P. 56.  Docs. 48, 57.  Specifically,

Plaintiffs move for summary judgment on certain of their FDCPA claims, Doc. 48, and

Defendants move for summary judgment on Plaintiffs' TCPA claim.  Doc. 57.  Additionally,

Defendants request that the Court limit Plaintiffs at trial to "garden variety" emotional distress

damages on their FDCPA claims.  *Id.*  For the reasons set forth below, Plaintiffs' motion is

GRANTED in part and DENIED in part, and Defendants' motion is DENIED.

## I.   Factual Background

The following facts are undisputed except where otherwise noted.

### a.   Defendants' Written Communications to Plaintiffs

On or about August 11, 2004, Plaintiff Krisber Castro executed a note (the "Note") in the

principal amount of $83,000 payable to National Bank of Kansas, secured by a mortgage (the

"Mortgage") on the home she owns with her husband, Mario Castro.  Pls.' 56.1 Stmt. ¶ 1.[1]

In or about 2008, the Castros fell behind on their mortgage payments.  *Id.* ¶ 7.  Beginning in February 2009, Countrywide Home Loans ("Countrywide"), and then Bank of America ("BOA"), sent Plaintiff Krisber Castro Monthly Home Loan Statements stating that their "records indicate that [her] loan [was] in default."  Declaration of Krisber Castro ("Krisber Decl.") (Doc. 52), Ex. C.  In or about August 2009, BOA sent Ms. Castro a notice stating that "[BOA] . . . services your home loan on behalf of the holder of your note (Noteholder).  This is to advise you that your account remains seriously delinquent."  Krisber Decl., Ex. D.  The notice further stated that "[i]f we do not hear from you immediately, we will have no alternative but to take appropriate action to protect the interest of the Noteholder in your property. . . . [BOA] . . . will proceed with collection action until your account is brought fully current . . . ."  *Id.*  The notice advised that the total amount due on August 16, 2009 was $710.14.  *Id.*

In or about August 2009, after the debt was in default, Defendant Green Tree, a debt collector,[2] acquired the right to collect the defaulted mortgage debt from Plaintiffs.  Pls.' 56.1 Stmt. ¶¶ 10, 12; *see also* Krisber Decl., Ex. E; Declaration of Brian L. Bromberg ("Bromberg Decl.") (Doc. 51), Ex. 1 at 7 ¶ 10, Ex. 2 at 7 ¶ 10 (admitting that Green Tree is a "debt collector" as defined by 15 U.S.C. § 1692a(6)).  Thereafter, Ms. Castro received a letter from Green Tree dated September 18, 2009.  Pls.' 56.1 Stmt. ¶ 13.  The letter stated that it was "an attempt to collect a debt" and identified Green Tree as a "debt collector."  Krisber Decl., Ex. E.  The letter

---

[1] Citations to "Pls.' 56.1 Stmt." refer to Plaintiffs' Rule 56.1 Statement of Material Facts, Doc. 56.  Citations to "Defs.' 56.1 Stmt." refer to Defendants' Rule 56.1 Statement of Material Facts, Doc. 60.

[2] "Debt collector" is defined in the FDCPA as "any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

also stated that the servicing of Plaintiffs' loan was transferred to Green Tree on September 1, 2009, and identified the creditor as Citizens Bank of Pennsylvania.  *Id.*  The letter further advised:

> AS OF THE DATE OF THIS LETTER, YOU OWE $81,263.47. BECAUSE OF INTEREST, LATE CHARGES, AND OTHER CHARGES THAT MAY VARY FROM DAY TO DAY, THE AMOUNT DUE ON THE DAY YOU PAY MAY BE GREATER. HENCE, IF YOU PAY THE AMOUNT SHOWN ABOVE, AN ADJUSTMENT MAY BE NECESSARY AFTER WE RECEIVE YOUR CHECK, IN WHICH EVENT WE WILL INFORM YOU BEFORE DEPOSITING THE CHECK FOR COLLECTION. FOR FURTHER INFORMATION, CONTACT CUSTOMER SERVICE AT THE ADDRESS OR TOLL-FREE NUMBER LISTED ABOVE.

*Id.*  At no time before sending the September 18, 2009 letter did Green Tree accelerate the Note. Pls.' 56.1 Stmt. ¶ 18.

On September 21, 2009, Green Tree sent Ms. Castro a second letter, offering automatic payment services and advising that she would soon begin receiving monthly mortgage statements from Green Tree.  Krisber Decl., Ex. F.

Thereafter, Green Tree sent Ms. Castro a monthly billing statement dated September 26, 2009, which stated that the "total payment due" on October 16, 2009 was $1,704.02, which consisted of a current payment of $682.82 and a past due amount payment of $1,021.20.  Krisber Decl., Ex. G.  Accompanying the September 26, 2009 bill was a form in which Green Tree advised Plaintiffs of the types of personal information it collects and shares, the reasons it can share their personal information, and whether Plaintiffs can limit this sharing.  *Id.*

On or about October 28, 2009, Green Tree sent Ms. Castro a notice entitled "90 Day Notice," which stated:  "You could lose your home.  Please read the following notice carefully." Krisber Decl., Ex. H.  The letter further stated:

3

> As of 10/28/2009, your home is 73 days in default. Under New York State Law, we are required to send you this notice to inform you that you are at risk of losing your home. You can cure this default by making the payment of $1,704.02 dollars by 01/29/2010.
>
>                    *        *        *
>
> While we cannot assure that a mutually agreeable resolution is possible, we encourage you to take immediate steps to try to achieve a resolution. The longer you wait, the fewer options you may have. If this matter is not resolved by 01/29/2010, we may commence legal action against you (or sooner if you cease to live in the dwelling as your primary residence).

*Id.*

After the 90 Day Notice of default expired, Green Tree determined not to commence suit against Plaintiffs. Bromberg Decl., Ex. 3 (Rule 30(b)(6) Depo. Tr.) at 206-27.

### b. Defendants' Telephone Calls

Soon after Plaintiffs received the first letter from Green Tree dated September 18, 2009, they began receiving calls on their home and cell phones from Defendant Smith, a collector employed by Green Tree, who contacted Plaintiffs in an attempt to get them current on their loan payments. Defs.' Response to Pls.' 56.1 Stmt. ¶¶ 29-30, 33.[3] It is undisputed that Smith placed numerous calls to Plaintiffs in an attempt to collect on their debt.[4] *Id.* ¶¶ 33-34. It is also undisputed that on six occasions, Plaintiffs returned Defendants' calls using their cell phones. *See* Pls.' Response to Defs.' 56.1 Stmt. ¶¶ 5-6, 10. The parties also agree that Plaintiffs never went over their allotted cell phone minutes in the months in which Green Tree placed calls to

---

[3] Citations to "Defs.' Response to Pls.' 56.1 Stmt." refer to Defendants' Response to Plaintiffs' 56.1 Statement of Facts, Doc. 64. Similarly, citations to "Pls.' Response to Defs.' 56.1 Stmt." refer to Plaintiffs' Response to Defendants' Local Rule 56.1 Statement, Doc. 69.

[4] Although Plaintiffs assert that "Green Tree and its collectors called [them] over 550 times," Krisber Decl. ¶ 31, they fail to support that allegation with any evidence, such as copies of phone records or similar documentation.

their cell phones.  *Id.* ¶ 11.  Mario Castro testified that he believes that Green Tree obtained

Plaintiffs' cell phone numbers from its Caller ID when Plaintiffs initiated the calls to Green Tree.

*See* Affidavit of Jonathan E. Hansen ("Hansen Aff.") (Doc. 58), Ex. K (Mario Castro Depo. Tr.)

at 25.

 The parties dispute the number of calls Green Tree placed to Plaintiffs' cell phones.

Although Plaintiffs admit that the cell phone records introduced at the deposition of the Verizon

Wireless representative indicate only four calls to Plaintiffs' cell phones, they contend that those

phone records do not include all the calls placed by Green Tree to their cell phones.  Pls.'

Response to Defs.' 56.1 Stmt. ¶ 8.  For their part, Defendants state that none of these four calls to

Plaintiffs' cell phones were made using an automatic dialing system.  Defs.' 56.1 Stmt. ¶ 9.

Plaintiffs, on the other hand, point to Green Tree's Rule 30(b)(6) witness, who unequivocally

testified at his deposition that at least thirty-four telephone calls were made with an automatic

dialing system to one of the Plaintiffs' cell phone numbers.  *See* Pls.' Response to Defs.' 56.1

Stmt. ¶ 9; *see also* Affirmation of Joseph Mauro ("Mauro Aff.") (Doc. 71), Ex. M (30(b)(6)

Depo. Tr.) at 11-12 ("Q. So there's 34 calls that were made with an auto dialer to the telephone

number 845-536-9192, appearing in these notes, correct?  A. Yes, sir.  Q. And then there are two

calls that you are suggesting the auto dialer attempted to call, but the calls didn't go through?  A.

That's correct."); Ex. B (Verizon Wireless Depo. Tr.) at 4-5 (testifying that 845-536-9192 is one

of the cell phone numbers assigned to Mario Castro by Verizon Wireless).  Additionally,

Defendants assert that one of Plaintiffs' cell phone numbers was mistakenly listed by Green Tree

as a non-cell phone number, and that once the error was discovered, the listing was changed.

Defs.' 56.1 Stmt. ¶¶ 13-14; *see also* Hansen Aff., Ex. M (30(b)(6) Depo. Tr.) at 20, 23-24.

Defendant Smith testified that Green Tree instructed its employees not to call consumers' cell

phone numbers using the automatic dialer without their consent. *See* Hansen Aff., Ex. J (Smith Depo. Tr.) at 85-86. Plaintiffs, on the other hand, contend that Defendants' calls to their cell phones were "no mistake" and that they were made "[a]s part of [Green Tree's] orchestrated campaign of harassment." Pls.' Response to Defs.' 56.1 Stmt. ¶¶ 13-14. In support of their assertion, Plaintiffs point to the deposition transcript of non-parties who also claim to have received collection calls from Green Tree, as well as a list of state lawsuits against Green Tree. *Id.*; *see also* Mauro Aff., Exs. I, J, K. Moreover, Tammy Beaty, who the Court assumes is a current or former collector for Green Tree,[5] testified that she is not aware of any Green Tree policy prohibiting calls to consumers' cell phones. Mauro Aff., Ex. G (Beaty Depo. Tr.) at 49.

Plaintiffs included in their submissions to the Court a transcription of thirty voicemail messages left by Defendant Smith and his coworkers on the Plaintiffs' home and cellular phones.[6] Krisber Decl., Ex. I; Pls.' 56.1 Stmt. ¶ 44.[7]

## II.   Legal Standard

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact." Fed. R. Civ. P. 56(a). "An issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Senno v. Elmsford Union Free Sch. Dist.*, 812 F. Supp. 2d 454, 467 (S.D.N.Y. 2011) (citing *SCR Joint Venture L.P. v. Warshawsky,* 559 F.3d 133, 137 (2d Cir. 2009)). A fact is "material" if it might affect the outcome of the litigation under the governing law. *Id.* The party moving for summary

---

[5] Plaintiffs fail to identify Ms. Beaty in their submissions to the Court, and have only provided the Court with certain excerpts of her deposition testimony.

[6] Plaintiffs also submitted a CD containing digital "WAV" files of the voicemail messages, attached to the Krisber Declaration as Exhibit J.

[7] Defendants do not appear to contest the accuracy or authenticity of Plaintiffs' transcriptions and, in fact, cite to the transcriptions in their responses to Plaintiffs' 56.1 Statement. *See* Defs.' Response to Pls.' 56.1 Stmt. ¶¶ 37-38, 40.

judgment is first responsible for demonstrating the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  If the moving party meets its burden, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment."  *Saenger v. Montefiore Med. Ctr.*, 706 F. Supp. 2d 494, 504 (S.D.N.Y. 2010) (internal quotation marks omitted) (quoting *Jaramillo v. Weyerhaeuser Co.*, 536 F.3d 140, 145 (2d Cir. 2008)).

In deciding a motion for summary judgment, the Court must "'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'"  *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (quoting *Williams v. R.H. Donnelley, Corp.,* 368 F.3d 123, 126 (2d Cir. 2004)).  However, in opposing a motion for summary judgment, the non-moving party may not rely on unsupported assertions, conjecture or surmise.  *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).  The non-moving party must do more than show that there is "some metaphysical doubt as to the material facts."  *McClellan v. Smith,* 439 F.3d 137, 144 (2d Cir. 2006) (internal quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986)).  To defeat a motion for summary judgment, "the non-moving party must set forth significant, probative evidence on which a reasonable fact-finder could decide in its favor."  *Senno*, 812 F. Supp. 2d at 467-68 (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 256–57 (1986)).

## III.    The FDCPA

Congress enacted the FDCPA in 1977 in order to check "abusive, deceptive, and unfair" practices employed by debt collectors.  *Wiener v. Bloomfield*, 901 F. Supp. 771, 774 (S.D.N.Y. 1995).  As relevant to the present motion, the Act requires that, within five days after the initial

communication with a consumer in connection with the collection of any debt, debt collectors send the consumer a validation notice which provides certain information regarding the debt. 15 U.S.C. § 1692g. It generally prohibits the use of "any false, deceptive, or misleading representation or means in connection with the collection of any debt." *Id.* § 1692e. The Act also proscribes debt collectors from using "unfair or unconscionable means to collect or attempt to collect any debt," such as the collection of any amount "unless such amount is expressly authorized by the agreement creating the debt or permitted by law." *Id.* § 1692f(1).

If a plaintiff establishes a violation of the FDCPA, he or she may recover statutory damages in an amount not to exceed $1,000, plus any actual damages sustained. *See id.* §§ 1692k(a)(1), (a)(2)(A).

Here, Plaintiffs' claims under the FDCPA are based upon Defendants' various written and oral communications, including the phone messages Defendants left on Plaintiffs' voicemail.[8]

### a. Least Sophisticated Consumer Standard

In evaluating FDCPA claims, courts in this Circuit use "an objective standard based on whether the 'least sophisticated consumer' would be deceived by the collection practice." *Maguire v. Citicorp Retail Servs., Inc.*, 147 F.3d 232, 236 (2d Cir. 1998). The Second Circuit has held that "[t]he hypothetical least sophisticated consumer does not have the astuteness of a

---

[8] Although the Second Circuit has yet to rule explicitly on the issue of individual liability under the FDCPA, several courts, including courts within this Circuit, have held that individual liability may be imposed where the defendant sought to be held liable personally engaged in the prohibited conduct. *See Krapf v. Prof'l Collection Servs., Inc.*, 525 F. Supp. 2d 324, 327 (E.D.N.Y. 2007) (citing cases); *see also Williams v. Prof'l Collection Servs., Inc.*, No. 04 Civ. 286 (JS) (ARL), 2004 WL 5462235, at *4 (E.D.N.Y. Dec. 7, 2004) ("A high-ranking employee, executive, or director of a collection agency may fit within the statutory definition of a debt collector as long as the defendant was personally involved in the collection of the debt.") (citation omitted). Defendants do not address the issue of Defendant Smith's liability under the FDCPA in their submissions to the Court. Accordingly, the Court assumes that Defendants concede that Smith may be held liable as a "high-ranking employee, executive, or director" because of his undisputed personal involvement in the collection of the debt.

Philadelphia lawyer or even the sophistication of the average, everyday, common consumer, but is neither irrational nor a dolt." *Ellis v. Solomon & Solomon, P.C.*, 591 F.3d 130, 135 (2d Cir. 2010) (quotation marks and citation omitted).  Although the goal of this standard is to protect those consumers "most susceptible to abusive debt collection practices," courts are "careful not to conflate lack of sophistication with unreasonableness." *Id.* (citation omitted).  Accordingly, "the FDCPA does not aid plaintiffs whose claims are based on bizarre or idiosyncratic interpretations of collection notices," and "even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a collection notice with some care." *Id.* (internal quotation marks and citations omitted).  Moreover, the Second Circuit has indicated that because the least sophisticated consumer standard is objective, the determination of how the least sophisticated consumer would view language in a defendant's collection letter is a question of law.  *Berger v. Suburban Credit Corp.*, No. 04 Civ. 4006 (CLP), 2006 WL 2570915, at *3 (E.D.N.Y. Sept. 5, 2006) (citing *Schweizer v. Trans. Union Corp.*, 136 F.3d 233, 237-38 (2d Cir. 1998)); *see also Bodur v. Palisades Collection, LLC*, 829 F. Supp. 2d 246, 253 (S.D.N.Y. 2011) ("In the Second Circuit, the least sophisticated consumer standard may be applied as a matter of law and thus is an appropriate issue for disposition on a motion for summary judgment.") (citation omitted); *Beauchamp v. Fin. Recovery Servs., Inc.*, No. 10 Civ. 4864 (SAS), 2011 WL 891320, at *2 n.18 (S.D.N.Y. Mar. 14, 2011) ("Although courts are divided on whether breach of the least sophisticated consumer standard is a question of law or fact, the trend in the Second Circuit is to treat this question as a matter of law that can be resolved on a motion to dismiss.").[9]

---

[9] Defendants argue that it is for the jury to determine whether the letters at issue here would deceive the "least sophisticated consumer." Defs.' Mem. L. Opp. 3-4.  The case upon which Defendants rely, however, actually supports the Court's conclusion that it may decide how the least sophisticated consumer would view the Defendants'

Finally, because the FDCPA imposes strict liability, "a consumer need not show intentional conduct by the debt collector to be entitled to damages," *Russell v. Equifax A.R.S.*, 74 F.3d 30, 33 (2d Cir. 1996), and a "single violation of the FDCPA is sufficient to impose liability." *Zimmerman v. Portfolio Recovery Assocs., LLC*, 276 F.R.D. 174, 177 (S.D.N.Y. 2011) (quoting *Ellis*, 591 F.3d at 133).

## IV.   Plaintiffs' Motion for Partial Summary Judgment

### a.   September 18, 2009 Letter

Plaintiffs argue that Green Tree's September 18, 2009 letter violated FDCPA §§ 1692g, -e, -e(2)(A), -e(5), -e(10), -f and –f(1) because it states that Plaintiffs owed "$81,263.47" (i.e., the entire balance of Plaintiffs' loan) as of the date of the letter, rather than Plaintiffs' past-due balance of $1,021.20.[10]  Pls.' Mem. L. 14.

### i.   15 U.S.C. § 1692g

Section 1692g of the FDCPA requires that "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication . . . send the consumer a written notice containing":  (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, the debt will be assumed to be valid; (4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period

---

collection letters as a matter of law.  *See Suquilanda v. Cohen & Slamowitz, LLP*, No. 10 Civ. 5868 (PKC), 2011 WL 4344044, at *3 (S.D.N.Y. Sept. 8, 2011) ("Whether a collection letter violates the FDCPA may be decided as a matter of law.").

[10] Although Plaintiffs spend several pages of their opening brief arguing that their claims are actionable under the FDCPA because Defendants are "debt collectors" and Plaintiffs are "consumers," Pls.' Mem. L. 8-12, Defendants do not appear to contest that they are "debt collectors" subject to the FDCPA on the facts of this particular case. Accordingly, the Court assumes that Defendants are subject to the Act.  *See also supra* note 8.

that the debt is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer; and (5) a statement that, upon the consumer's written request, the debt collector will provide the consumer with the name and address of the original creditor, if different from the current creditor.  15 U.S.C. § 1692g(a).  The written communication required by this provision is known as a "validation notice."  *See Muniz v. Bank of Am., N.A.*, No. 11 Civ. 8296 (PAE), 2012 WL 2878120, at *3, *3 n.3 (S.D.N.Y. July 13, 2012).

In support of their argument that Defendants' September 18, 2009 letter violated the FDCPA by "assert[ing] a claim for the entire balance of [their] loan," Pls.' Mem. L. 14, Plaintiffs cite case law holding that § 1692g requires debt collectors to "disclose the amount past due as of the date the letter is sent, not the consumer's overall balance with the creditor."  *Adlam v. FMS, Inc.*, No. 09 Civ. 9129 (SAS), 2010 WL 1328958, at *3 (S.D.N.Y. April 5, 2010).  Defendants do not appear to contest that § 1692g requires debt collectors to inform consumers of the amount past due as of the date of the communication.[11]  *See* Defs.' Mem. L. Opp. 5 ("Green Tree complied with the statutory requirement that it provide the plaintiffs with their past due balance . . . .").  They argue, however, that debt collectors may notify a consumer of her past due amount

---

[11] The Court notes that the Second Circuit has not ruled on the issue of whether Section 1692g requires a debt collector to state the amount past due or the consumer's overall balance with the creditor.  It appears that the only court within this District to have addressed the issue held that the "amount of the debt" required to be included in the validation notice is the amount past due as of the date the letter is sent.  *See Adlam*, 2010 WL 1328958, at *3.  The Court sees no reason to disagree with the holding of the *Adlam* court, especially in light of Defendants' failure to distinguish the case or otherwise dispute the holding.  Moreover, the Court finds the reasoning of the Seventh Circuit in *Barnes v. Advanced Call Ctr. Techs., LLC*, 493 F.3d 838, 840 (7th Cir. 2007), to which the *Adlam* court cited, persuasive.  There, the court explained that it would be "absurd" to hold that "the entire . . . balance is the 'amount of the debt'" under the statute because it would suggest that "a dunning letter providing only the total . . . balance that did not even mention the amount actually sought by the debt collector would be in compliance."  *Id.*  The court went on to hold that "[s]uch a reading of the statute would defeat the provision's very purpose by increasing the confusion:  a recipient would know neither the amount sought by the dunning letter nor the fact that she was not required to pay off her . . . balance in full."  *Id.*  Moreover, where the validation notice is sent by the debt collector, rather than the creditor, the "'amount of the debt' must be that owed to the [debt collector], meaning the amount past due.  Whatever may be owed to [the creditor] . . . is of no consequence to this case. . . . Only the past due amount, the amount owed [the debt collector], can be the 'amount of the debt.'"  *Id.*  Similarly, here, the validation notice was sent by Green Tree, a debt collector, and, accordingly, the total balance that may be owed to the creditor, Citizens Bank of Pennsylvania, is of no consequence.

"*[w]ithin five days* after the initial communication with [the] consumer," and that they did in fact provide Plaintiffs with their past due balance within five days of their initial contact.  *Id.* (emphasis in original).  In support of their argument, Defendants assert, without citation to any authority, that "Section 1692g <u>expressly</u> provides that a validation notice can be contained in the initial communication, as here, while the amount due can come within five days thereafter."  *Id.* at 6 (emphasis in original).  In their reply papers, Plaintiffs contest Defendants' reading of the provision, and argue that the statute expressly provides precisely the opposite of what Defendants claim; i.e., that unless *all* of the items of information listed in § 1692g are "contained in the initial communication," then they *all* must be contained in the communication sent within five days of the initial communication.  Pls.' Reply Mem. L. 4.

The Court notes at the outset that even assuming Defendants' reading of § 1692g is correct (i.e., that it permits debt collectors to include a less-than-complete validation notice in the initial communication and inform the consumer of the amount due within five days thereafter), Defendants simply did not inform Plaintiffs of the amount past due within five days of their initial communication.  Although Defendants assert that their initial communication with Plaintiffs was by letter dated September 21, 2009, Defs.' Mem. L. Opp. 5, the record is clear that Defendants' first communication with Plaintiffs in connection with the collection of the debt was by letter dated *September 18, 2009.  See* Pls.' 56.1 Stmt. ¶¶ 13-15; *see also* Krisber Decl., Ex. E. Indeed, the September 18, 2009 letter explicitly states that it is "an attempt to collect a debt," that "any information obtained will be used for that purpose," and that Green Tree is a "debt collector."  Krisber Decl., Ex. E.  Moreover, it is also undisputed that Defendants did not inform Plaintiffs of the amount owed on their debt until at least September 26, 2009, *eight days* after

their initial communication.[12] *See* Krisber Decl., Ex. G.  Accordingly, even assuming Defendants' reading of § 1692g is correct, Defendants' argument would still fail, as the record is clear that they did not provide Plaintiffs with their past due balance within five days of their initial communication.

Finally, even assuming *arguendo* that Defendants did inform Plaintiffs of the amount owed on the debt within five days of their September 18, 2009 initial communication, Plaintiffs would still be entitled to summary judgment on their claim because the Court finds that, as a matter of statutory interpretation, the express wording of § 1692g requires that *all* of the information listed in the provision be contained within a single communication to the consumer. Indeed, § 1692g clearly refers to a *singular* "written notice" when it directs the debt collector to "send the consumer *a written notice*."  As Plaintiffs argue, if Defendants' interpretation of the requirements of § 1692g was correct, and debt collectors were permitted to send the required information to consumers in multiple, serial written communications, consumers would have no way of knowing when the thirty day period for disputing the debt began to run.  Pls.' Reply Mem. L. 5-6.  Indeed, the September 18, 2009 letter, which Defendants implicitly concede does not accurately list the amount of the debt—and thus does not include all the required information listed in § 1692g—states that Plaintiffs have thirty days after receiving the notice to dispute the validity of the debt.  Defendants argue, however, that they were permitted under the statute to inform Plaintiffs of the amount past due within five days of the September 18, 2009 letter.  The

---

[12] Even assuming *arguendo* that the Defendants' September 21, 2009 letter was their initial contact with Plaintiffs, the September 21 letter does not contain *any* of the required information listed in § 1692g.  Rather, the September 21 letter provides information regarding automatic payment services and states that Plaintiffs would soon begin receiving monthly mortgage statements from Green Tree.  Krisber Decl., Ex. F.  Accordingly, *even if* the Court treated the September 21 letter as the "initial communication," Defendants' argument would still fail because, taken together, the September 21 letter and the September 26 billing statement do not contain all the information required by § 1692g of the FDCPA.

13

Court finds that under Defendants' reading of the statute, the "least sophisticated consumer" would be confused as to whether the thirty day period began to run as of the date of the initial communication (i.e., the September 18, 2009 letter) or the September 26, 2009 monthly billing statement listing the actual amount owed on the debt.

Accordingly, because the September 18, 2009 letter did not accurately identify the amount of debt owed, and because Defendants failed to send a notice containing all the required information within five days of the September 18 letter, the Court finds that summary judgment in favor of Plaintiffs on their § 1692g claim is warranted. *See Thomas v. Am. Serv. Fin. Corp.*, No. 12 Civ. 4235 (ADS) (AKT), 2013 WL 1898954, at *6 (E.D.N.Y. May 7, 2013) ("[U]nless a debt collector conveys this statutorily-required information, it violates the [FDCPA].") (quoting *Hecht v. Green Tree Servicing, LLC*, No. 12 Civ. 498 (JBA), 2013 WL 164514, at *2 (D. Conn. Jan. 15, 2013)).

### ii.   15 U.S.C. § 1692e

Section 1692e of the FDCPA prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt[,]" and provides a non-exhaustive list of example violations. 15 U.S.C. § 1692e. In particular, Plaintiffs allege that Defendants violated §§ 1692e(2)(A), which prohibits "[t]he false representation of the character, amount, or legal status of any debt"; 1692e(5), prohibiting the "threat to take any action that cannot legally be taken"; and 1692e(10), which prohibits "[t]he use of any false representation or deceptive means to collect . . . any debt."

As previously discussed, courts in the Second Circuit evaluate claims under the FDCPA according to how the "least sophisticated consumer" would understand the communication. *See Maguire*, 147 F.3d at 236. Additionally, several other circuit courts, as well as a number of

14

district courts in this Circuit, read a materiality requirement into the FDCPA's prohibition of false, deceptive or misleading practices in the collection of a debt. *See Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012) (citing cases). Thus, in determining whether a plaintiff has stated a claim under § 1692e of the FDCPA, courts have considered whether the false representations "rest on material misrepresentations." *Warren v. Sessoms & Rogers, P.A.*, 676 F.3d 365, 374 (4th Cir. 2012); *see also Walsh v. Law Offices of Howard Lee Schiff, P.C.*, No. 11 Civ. 1111 (SRU), 2012 WL 4372251, at *3-*4 (D. Conn. Sept. 24, 2012) (citing cases and adopting materiality requirement); *Lane v. Fein, Such & Crane LLP*, 767 F. Supp. 2d 382, 389-90 (E.D.N.Y. 2011) (holding that misstatement in state court complaint was not materially false or misleading under the FDCPA). Case law in this Circuit "demonstrates that communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA." *Gabriele*, 503 F. App'x at 94.

Plaintiffs argue that "[b]y attempting to collect the full accelerated amount of [their] mortgage debt—without having accelerated it," Defendants violated § 1692e. Pls.' Mem. L. 15. Defendants, on the other hand, argue that they cannot be held liable under § 1692e because the September 18, 2009 letter did not constitute a demand for payment. Defs.' Mem. L. Opp. 6. Rather, the letter established Defendants' relationship with Plaintiffs and set forth the loan amount for validation purposes. *Id.*

As an initial matter, the Court rejects as patently frivolous Defendants' argument that the September 18, 2009 letter was not a request for payment. The language of the notice is clear, as it specifically states, "This is an attempt to collect a debt. . . . Green Tree is a debt collector." Krisber Decl., Ex. E. Moreover, the Court notes that § 1692e governs communications made "in

connection with the collection of any debt." 15 U.S.C. § 1692e.  There can be no doubt that Green Tree's September 18, 2009 validation notice was made "in connection with the collection" of the debt owed by Plaintiffs.  Additionally, courts have routinely found § 1692e violations in connection with validation notices sent pursuant to § 1692g, like the September 18 notice at issue here.  *See, e.g.*, *Russell*, 74 F.3d at 34-35 (holding that validation notice violated both §§ 1692g and 1692e); *Ehrich v. I.C. Sys., Inc.*, 681 F. Supp. 2d 265, 273-74 (E.D.N.Y. 2010) (same); *Foti v. NCO Fin. Sys., Inc.*, 424 F. Supp. 2d 643, 666-67 (S.D.N.Y. 2006) ("The standard for determining a violation of § 1692e(10) is essentially the same as that for § 1692g.").

   For the reasons set forth above regarding Green Tree's violation of § 1692g, the September 18, 2009 letter also violates § 1692e.  The Court finds that the least sophisticated consumer would be misled by the inclusion of the total underlying balance, rather than the amount being collected, and would not know either the amount sought by the letter or the fact that she was not required to pay off the balance in full.   Accordingly, the September 18 letter could mislead a consumer as to the "nature and legal status of the underlying debt" and/or "impede a consumer's ability to respond to or dispute collection."  *Gabriele*, 503 F. App'x at 94.  Accordingly, the Court finds that summary judgment in favor of Plaintiffs is warranted on their § 1692e claim.

### iii.  15 U.S.C. § 1692f

   Section 1692f of the FDCPA prohibits a debt collector from using any "unfair or unconscionable means to collect or attempt to collect any debt."  15 U.S.C. § 1692f.  The statute lists eight non-exhaustive examples of § 1692f violations.  Plaintiffs specifically argue that Defendants' September 18, 2009 letter violated § 1692f(1), which prohibits "[t]he collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation)

unless such amount is expressly authorized by the agreement creating the debt or permitted by law."

Other than a vague reference to § 1692f in their moving papers, Plaintiffs fail to provide the Court with any evidence or case law to support their claim that Defendants' collection activities were not authorized by agreement or permitted by law.  Moreover, although Defendants' use of Plaintiffs' total underlying debt in the September 18, 2009 letter may have falsely represented the amount of the debt owed, that does not suggest, as a matter of law, that it constituted "unfair or unconscionable means."   Accordingly, the Court finds that Plaintiffs are not entitled to summary judgment on their §1692f claim.

### b.  Green Tree's "Privacy Notice"

Plaintiffs argue that Green Tree's September 26, 2009 "Privacy Notice" violated FDCPA §§ 1692e, e(5) and e(10).  Krisber Decl., Ex. G.  As noted above, 15 U.S.C. § 1692e prohibits "any false, deceptive, or misleading representation or means in connection with the collection of any debt."  Subsection (5) prohibits "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken," *id.* § 1692e(5), and subsection (10) prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer," *id.* § 1692e(10).

Plaintiffs contend that the Privacy Notice violates the FDCPA because it falsely threatens to disclose information about Plaintiffs' debt to third parties.  Pls.' Mem. L. 16-17.  Specifically, the Privacy Notice states that Green Tree may share Plaintiffs' personal information, including: (i) identifying information, such as their name, address, and social security number; (ii) financial information, such as their income, assets, credit worthiness and credit history; and (iii) transactional information with Green Tree and its affiliates, such as account activity and loan

17

terms, and information that is provided to Green Tree by third parties, including lenders that have transferred the loan or servicing rights and credit reporting agencies.  The Notice then lists several "reasons [Green Tree] can share your personal information" and indicates that in addition to Green Tree's "affiliates," it may also share certain information with "other financial companies" and "non-affiliates."  Additionally, the Notice indicates which types of sharing Plaintiffs can opt out of.  Finally, it is undisputed that the Privacy Notice accompanied a Monthly Billing Statement, which stated that Plaintiffs' account "is seriously past due" and listed the total payment due as $1,704.02.

Defendants appear to make two arguments in opposition to Plaintiffs' motion.  First, Defendants argue that the Privacy Notice does not mention anything about Plaintiffs' "debt" and therefore does not convey an intent or legal entitlement to disseminate information related to Plaintiffs' debt.  Defs.' Mem. L. Opp. 8.  Moreover, Defendants contend that the Notice does not threaten or otherwise condition Plaintiffs' privacy rights on the payment of their debt.  *Id.* Second, Green Tree argues that it was *required* by law to send the Privacy Notice to Plaintiffs under the Gramm-Leach-Bliley Act ("GLBA"), 15 U.S.C.A. § 6801, *et seq.*[13]  *Id.*

In support of their argument, Plaintiffs rely heavily on the Seventh Circuit opinion in *Ruth v. Triumph P'ships*, 577 F.3d 790 (7th Cir. 2009), in which the court found a similar privacy notice "clearly misleading on [its] face."  The privacy notice at issue in *Ruth* stated that the debt collector would "disclose nonpublic personal information" about the consumer to a wide variety of third parties, including direct marketers, retailers, banks, and mortgage lenders, unless the consumer executed an "Opt–Out Response Form."  *Id.* at 793.  Additionally, the notice was

---

[13] The GLBA is a federal statute that, among other things, requires financial institutions to send a privacy notice whenever a new consumer relationship is established.

sent to the plaintiff in the same envelope as a collection letter.  The court provided the following

reasoning in support of its holding that the privacy notice violated the FDCPA:

> Upon receiving and reading the collection letter and the notice, the only reasonable conclusion that an unsophisticated consumer—or, indeed, any consumer—could reach is that the defendants were claiming a legal right to disclose the nonpublic information about the debtor that they had obtained as a consequence of attempting to collect the debt, and were threatening to do so unless the debtor affirmatively 'opted out.'  After all, the defendants had no other relationship with the plaintiffs and therefore had no foreseeable prospect of obtaining nonpublic information in any other way.  The defendants do not deny that sharing the nonpublic information they had about the plaintiffs, without their express prior consent, would have violated the FDCPA.  Thus, on its face, the only reasonable interpretation of the notice was as a threat to take illegal action. . . .  As a matter of law, therefore, the notice constitutes 'a threat to take . . . action that cannot legally be taken,' 15 U.S.C. § 1692e(5), and a 'false representation or deceptive means to collect or attempt to collect a [ ] debt,' *id.*§ 1692e(10).

*Id.* at 801-02.

Although not controlling, the Court finds the *Ruth* decision persuasive.  The type of

information collected and shared by Green Tree—like the information at issue in *Ruth*—includes

nonpublic, personal information, including the consumer's social security number, his or her

income, assets, and "information about [his or her] spouse or dependents."  Moreover, the Notice

explicitly states that Green Tree can share the consumer's personal information with "other

financial companies" and "non-affiliates" and indicates that the consumer may limit the sharing

of certain information only by sending in an "opt-out form."  However, the Notice specifically

provides that consumers *may not* limit Green Tree's sharing of information with other financial

companies "[f]or joint marketing" purposes.  Additionally, the Privacy Notice does not provide

the consumer with any assurances that Green Tree would take measures to ensure the consumer's

privacy or that the sharing would be in compliance with the FDCPA or other applicable privacy

law.  Accordingly, the least sophisticated consumer would reasonably conclude that the Privacy

Notice constituted a threat by Green Tree to disclose non-public information to nonparties unless

the consumer "opted out" or paid the amount demanded in the collection letter.

Contrary to Defendants' contention, the fact that the Notice does not specifically state

that Green Tree would share information about Plaintiffs' *debt* does not necessarily suggest that

the Notice does not violate § 1692e.  Indeed, § 1692e prohibits a debt collector from using "any

false, deceptive, or misleading representation or means *in connection with the collection of any*

*debt*."  15 U.S.C. § 1692e (emphasis added).  The Court finds that any reasonable trier of fact

would conclude that the Privacy Notice was sent *in connection with* the collection of Plaintiffs'

debt.  Like the notice in *Ruth*, the Privacy Notice was sent in the same envelope as the collection

letter, which clearly stated that it was "an attempt to collect a debt" and that "any information

obtained will be used for that purpose."[14]  Additionally, the only relationship Green Tree had

with Plaintiffs arose out of its ownership of Plaintiffs' defaulted debt.  "In sum, [Green Tree]

would not have sent this combination of materials to [Plaintiffs] if they had not been attempting

to collect a debt."[15]  *Ruth*, 577 F.3d at 799.

---

[14] Although Defendants assert that they were required by the FDCPA to disclose in the billing statement that it was "an attempt to collect a debt," Defs.' Mem. L. Opp. 8-9, the FDCPA only requires debt collectors to state that they are attempting to collect a debt in the "initial written communication with the consumer."  15 U.S.C. § 1692e(11). As discussed *supra*, the September 26 billing statement was not Defendants' initial communication with the Castros. Accordingly, because the September 26 statement was a "subsequent communication," pursuant to the FDCPA, Defendants were only required to disclose that the communication was from a debt collector.  *Id.*

[15] Green Tree's reliance on the GLBA is misplaced for the reasons stated above.  Additionally, the Court notes that the GLBA requires a debt collector to provide certain disclosures to consumers "[a]t the time of establishing a customer relationship with a consumer."  15 U.S.C. § 6803(a).  It is undisputed, however, that Green Tree sent Plaintiffs *two* letters prior to the September 26, 2009 notice—one on September 18, 2009 and another on September 21, 2009.  Moreover, after informing Plaintiffs that it would be servicing their loan, the September 21, 2009 letter specifically states, "We are pleased to welcome you to Green Tree."  Krisber Decl., Ex. F.  Accordingly, Green Tree had already established a "customer relationship" with Plaintiffs as of the time of the September 26, 2009 Privacy Notice.

20

Finally, Green Tree does not appear to deny that sharing the nonpublic information they had about Plaintiffs without their express prior consent would have violated the FDCPA.  Indeed, § 1692c(b) of the FDCPA clearly prohibits debt collectors from communicating with third parties about consumers absent certain exceptions.  It states:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector . . . a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector.

*See* 15 U.S.C. § 1692c(b).  Section 1692b allows debt collectors to communicate with third parties about a consumer *only* for the purpose of acquiring location information about the consumer under very limited conditions.  *See id.* § 1692b.  Thus, the FDCPA clearly prohibits Green Tree from sharing Plaintiffs' personal nonpublic information without their express prior consent and, accordingly, the only reasonable interpretation of the Notice was as a threat to take illegal action.  Moreover, inconsistent with the FDCPA's requirement that the debt collector affirmatively obtain actual permission directly from the consumer before disseminating certain information, the Privacy Notice provides that the consumer must affirmatively act to prevent the release of their private information.

Although the Second Circuit has not yet addressed the issue of privacy notices in the context of the FDCPA, the only court within this District of which the Court is aware to have addressed the question issued a decision that supports the Court's reading of the Privacy Notice at issue here.  In *Kinel v. Sherman Acquisition II LP*, No. 05 Civ. 3456 (RCC) (THK), 2006 WL 5157678 (S.D.N.Y. Feb. 28, 2006) (Report & Recommendation), *adopted* 2007 WL 2049566 (S.D.N.Y. July 13, 2007), the challenged privacy notice read as follows:

> ***Information we may collect.*** Information we receive from your
> account file at the time we purchase your account.  Information
> you give us on applications, questionnaires or through discussions
> with you.  Information about your transactions with any of the
> companies within the Sherman Financial Group LLC family of
> companies.  Information we receive from consumer reporting
> agencies and other third party information providers such as public
> records and databases [sic] providers containing publicly available
> data about you.
>
> ***No sharing of information:*** We do not disclose any non-public
> personal information about our customers to anyone outside of the
> Sherman Financial Group LLC family of companies, except as
> permitted by law.
>
> ***Confidentiality and security of information.*** We restrict access to
> nonpublic personal information about you to those employees who
> need to know such information and certain third party service
> providers who provide support services to us . . . .

*Id.* at *9.  The court in *Kinel* rejected the plaintiff's argument that the privacy notice violated the

FDCPA because it did not *expressly* state that customer information may be shared with third

parties other than for the purpose of debt collection.  *Id.* at *12.  Given the absence of such

language, the court held that an unsophisticated consumer would not have interpreted the notice

as reserving the right to make improper third party disclosures.  *Id.*  In so holding, the court

explicitly contrasted the privacy notice provided by the defendant in *Kinel* to the privacy notices

at issue in two Northern District of Illinois cases, *Chapman v. Worldwide Asset Mgmt.*, No. 04

Civ. 7625, 2005 WL 818880 (N.D. Ill. Apr. 6, 2005) and *Blair v. Sherman Acquisition*, No. 04

Civ. 4718, 2004 WL 2870080 (N.D. Ill. Dec. 13, 2004), in which the courts held that the notices

violated the FDCPA because they stated that defendants "may disclose [nonpublic personal]

information to third parties, including financial service providers, retailers, and direct

22

marketers," as well as "nonaffiliated third parties," and provided that in order to prevent such disclosure, the consumer must take the affirmative step of mailing in an opt-out form. *Chapman*, 2005 WL 818880, at *2, *4; *see also Blair*, 2004 WL 2870080, at *6-*7 (denying motion to dismiss claims under §§ 1692e(5) and e(10) where unsophisticated consumer could interpret privacy policy language to imply that personal information would be disclosed to third parties, and where policy required consumers to affirmatively opt-out of any such third party disclosures).

Similar to the language at issue in *Ruth, Chapman* and *Blair*, the Privacy Notice at issue here clearly states that Green Tree "collect[s] and share[s]" certain nonpublic information with third parties, including "non-affiliates" and "other financial companies," and requires the consumer to "opt out" of such sharing.  Accordingly, the Court finds that the Privacy Notice violates § 1692e of the FDCPA.

### i. Bona Fide Error Defense

Defendants submit that they were required by the GLBA to send the Privacy Notice to Plaintiffs and contend that complying with the requirements of both the GLBA and the FDCPA presents debt collectors with an "untenable situation."  Defs.' Mem. L. Opp. 9.  Although not explicitly stated as such, the Court reads Defendants' argument as a "bona fide error defense." Under the bona fide error defense, a debt collector may avoid FDCPA liability for a violation by establishing by a preponderance of the evidence that:  1) it was unintentional, and 2) that it "resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  15 U.S.C. § 1692k(c).  The Supreme Court recently held that a debt collector cannot escape liability under the bona fide error defense due to a mistake of law,

and that the defense applies only to "errors like clerical or factual mistakes." *Jerman v. Carlisle,*

*McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 130 S. Ct. 1605, 1614-15 (2010).

The type of "error" at issue here is due to a "mistake of law," rather than a factual or

clerical mistake, such as stating incorrectly the amount owed or inadvertently mailing a required

communication to the wrong address.  Although Defendants apparently attempted to comply

with the GLBA by issuing the Privacy Notice, the Notice violated the FDCPA by falsely

indicating that Green Tree had the right to disclose nonpublic information about the consumer

without his prior consent.  That Defendants' conduct is in conformity with the GLBA[16] does not

necessarily suggest that it is in conformity with the FDCPA.  Moreover, the Court rejects

Defendants' argument that complying with both the GLBA and the FDCPA presents debt

collectors with an "untenable situation."  Defs.' Mem. L. Opp. 9.  The FDCPA pertains

specifically to debt collectors and generally prohibits debt collectors from communicating with

third parties about consumers absent certain exceptions. 15 U.S.C. § 1692c(b).  The GLBA, on

the other hand, merely requires certain "financial institutions," including debt collectors, to

disclose to consumers their policies and practices with respect to the disclosure of consumers'

nonpublic personal information.  15 U.S.C. § 6803(a).  The GLBA further provides that financial

institutions *may* disclose personal information to a nonaffiliated third party so long as they give

the consumer the opportunity to "opt out" of the disclosure.  *Id.* § 6802(b)(1).  The GLBA does

---

[16] The Court notes that the Privacy Notice does not even appear to comply with the GLBA, as that statute requires that the financial institution provide "the policies that [it] maintains to protect the confidentiality and security of nonpublic personal information."  15 U.S.C. § 6803(c)(3).  It appears that Green Tree modeled the Privacy Notice on the model privacy form issued by the Federal Trade Commission.  *See* http://www.ftc.gov/privacy/privacyinitiatives/PrivacyModelForm.pdf (last visited August 5, 2013).  That model form, however, includes an entire page that is not included in Defendants' Privacy Notice.  That omitted page contains important information, such as the definition of "affiliates" and "nonaffiliates" and how the financial institution protects the consumer's personal information.  Defendants' Privacy Notice fails to include *any* information regarding the policies it has in place, if any, to protect the security of Plaintiffs' personal information.

24

not, as Defendants implicitly argue,[17] *require* that financial institutions disclose personal information to third parties; rather, the GLBA merely provides certain procedures financial institutions must follow *if* they choose to disclose nonpublic information. Accordingly, and contrary to Defendants' position, it is entirely possible for a debt collector to comply with both the GLBA and the FDCPA.[18] *See Ruth*, 577 F.3d at 801 n.6 ("The defendants submit that the Gramm-Leach-Bliley Act permits the sharing of certain kinds of nonpublic information unless a customer affirmatively opts out. . . . This is irrelevant, however, because, with a few exceptions not applicable here, the FDCPA bars debt collectors from communicating with third parties about a debtor in the absence of 'the prior consent of the consumer given directly to the debt collector.'") (quoting 15 U.S.C. § 1692c(b)).[19]

### c. Green Tree's October 28, 2009 Letter

Plaintiffs contend that Defendants' October 28, 2009 letter (the "90 Day Notice") violates §§ 1692e and 1692f of the FDCPA by, *inter alia*, threatening to take an action that could not be legally taken, in violation of § 1692e(5), and misstating that Plaintiffs' account was in

---

[17] Other than summarily arguing that it was "required by law to send this privacy notice to the plaintiffs" under the GLBA, Defs.' Mem. L. Opp. 8, Defendants fail to corroborate their apparent bona fide error defense with *any* evidence suggesting that their error was not intentional or that they had procedures in place to ensure compliance with both the FDCPA and the GLBA.

[18] To the extent that Defendants argue that complying with the FDCPA and the GLBA presents an "untenable situation" for debt collectors because the FDCPA "requires that the billing statement state that it is 'an attempt to collect a debt,'" Defs.' Mem. L. Opp. 8, as discussed *supra* note 14, the FDCPA only requires that a debt collector state that it is attempting to collect a debt in the *initial communication*. 15 U.S.C. § 1692e(11). Where, as here, the communication to the consumer is a subsequent communication, the debt collector is only required to state that the communication is from a debt collector. *Id.*

[19] Defendants' reliance on *Huertas v. Galaxy Asset Mgmt.*, 641 F.3d 28 (3d Cir. 2011), is misplaced. The court in *Huertas* did not consider the interplay of the GLBA and the FDCPA. Rather, the language quoted by Defendants in their opposition papers related to the question of whether a debt collector may attempt to collect upon a time-barred debt without violating the FDCPA. *Id.* at 32-33.

25

foreclosure, in violation of § 1692e(2)(A).[20]

The October 28, 2009 notice is labeled as a "90 Day Notice" and states at the beginning: "YOU COULD LOSE YOUR HOME.  PLEASE READ THE FOLLOWING NOTICE CAREFULLY."  Krisber Decl., Ex. H.  The letter continues by stating that Green Tree is required to send the notice "to inform you that you are at risk of losing your home" and that Plaintiffs can cure the default by making a payment of $1,704.02 by January 29, 2010.  *Id.*  The letter concludes by stating that "[i]f this matter is not resolved by 01/29/2010, we may commence legal action against you."  *Id.*

Plaintiffs argue that the letter threatens to take action that could not legally be taken because it does not comply with the procedures outlined in the Mortgage for foreclosing on the property; that is, Green Tree would not be permitted to foreclose on the property if Plaintiffs failed to comply with the terms of the 90 Day Notice because the Notice does not conform with the notice requirements under the Mortgage.  Pls.' Mem. L. 21-22.

### i.  Threat to take action

To establish a violation of § 1692e(5) based upon a purported threat to take legal action, a plaintiff must demonstrate two things:  (i) threatened action, (ii) that could not legally be taken or that was not intended to be taken.  *Baptist v. Global Holding & Inv. Co., L.L.C.*, No. 04 Civ. 2365 (DGT), 2007 WL 1989450, at *2 (E.D.N.Y. July 9, 2007).  With respect to the first element, courts look to the content of the communication, taken as a whole, to determine whether "the clear import of the language" threatens that "legal action has already been or is about to be initiated and can be averted from running its course only by payment."  *Sorel v. Capital One*

---

[20] Although Plaintiffs indicate in the subheading of the relevant section of their moving papers that the October 28, 2009 notice violated § 1692g, they do not mention that particular section in the body of their argument. Accordingly, the Court assumes that the reference to § 1692g was a mistake.

*Servs., L.L.C.*, No. 11 Civ. 703 (SRU), 2012 WL 3596487, at *6 (D. Conn. Aug. 20, 2012)

(quoting *Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25 (2d Cir. 1989)); *see

also Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993) (finding

false threat of litigation where the "'least sophisticated consumer' would interpret ... language to

mean that legal action was authorized, likely and imminent").  In analyzing false threat claims,

courts have held that "even where communications specifically refer to legal action, a threat does

not exist where the references are couched in terms of mere possibility." *Sorel*, 2012 WL

3596487, at *6 (quoting *Gervais v. Riddle & Assocs., P.C.*, 479 F. Supp. 2d 270, 274 (D. Conn.

2007); *Madonna v. Acad. Collection Serv., Inc.*, No. 95 Civ. 00875 (AVC), 1997 WL 530101, at

*7 (D. Conn. Aug. 12, 1997) (holding that the phrase "*may* choose to pursue legal action" was

"[f]ar from threatening legal action . . . [but] indicate[d] that legal action is an option available to

the creditor, who *may* indeed choose to take advantage of it") (emphasis in original)); *see also

Knowles v. Credit Bureau of Rochester*, No. 91 Civ. 14S (WMS), 1992 WL 131107, at *1-*2

(W.D.N.Y. May 28, 1992) (holding that the statement, "failure to pay will leave our client no

choice but to consider legal action" was not a "threat" under § 1692e(5) because "[a]t most, the

language . . . threatened that the *creditor* will have to consider legal action" and therefore "[n]o

action of any kind is threatened") (emphasis in original).  Accordingly, courts in this Circuit have

held that the "least sophisticated consumer" cannot reasonably believe that litigation is

"authorized and rapidly forthcoming" when told that litigation is merely being considered as an

option, "particularly where the party making the communication is not an attorney." *Gervais*,

479 F. Supp. 2d at 275.

    Here, the 90 Day Notice warns Plaintiffs that they "are at risk of losing [their] home" and

states that if the matter is not resolved by a particular date, Green Tree "*may* commence legal

action against you."  The "use of tentative words like 'may' rather than 'will'" conveys that

"legal action is merely an option rather than a foregone conclusion."  *Sorel*, 2012 WL 3596487,

at *9.  Moreover, the Court notes that the Notice provides Plaintiffs with information about

available options—other than paying the amount overdue—to avoid legal action.  The Notice

attaches a list of government-approved housing counseling agencies in Plaintiffs' area which

provide free or very low-cost counseling, and explicitly states that "[h]ousing counselors can

help you assess your financial condition and work with us to explore the possibility of modifying

your loan, establishing an easier payment plan for you, or even working out a period of loan

forbearance."  Krisber Decl., Ex. H.  The Notice continues:  "If you wish, you may also contact

us directly at 800-643-0202 and ask to discuss possible options."  *Id.*  Only after outlining the

possible available options to avoid foreclosure does the Notice indicate that Green Tree *may*

pursue legal action if the matter is not resolved by a certain date.  In light of the fact that the 90

Day Notice is *not* from an attorney, and merely indicates that litigation may be considered as an

available option, the Court finds that the Notice does not threaten that legal action "has already

been or is about to be initiated and can be averted from running its course only by payment."

*Pipiles*, 886 F.2d at 25.  To the contrary, the language and structure of the Notice suggest that

Plaintiffs have several possible options other than payment to avoid legal action, and indicate

that such legal action is merely one possible course of action.  Accordingly, because the Court

finds that the Notice does not constitute a "threat" to take an action that cannot legally be taken,

Plaintiffs are not entitled to summary judgment on their FDCPA claim on the 90 Day Notice.[21]

---

[21] For the reasons set forth above, the Court also finds that the 90 Day Notice does not constitute an "unfair or unconscionable" practice under § 1692f of the FDCPA.

### d.  Defendants' Phone Messages

Plaintiffs argue that Defendant Smith's various voicemails do not contain the notices required by 15 U.S.C. § 1692e(11), which requires that in "subsequent communications" with the consumer, the debt collector disclose that the communication is from a debt collector.  Pls.' Mem. L. 12.  Plaintiffs submitted a transcription of thirty voicemail messages left by Defendant Smith and his Green Tree coworkers as Exhibit I to the Krisber Declaration, and the Court will refer to those transcriptions in assessing the parties' arguments.

It cannot be disputed that none of the messages at issue explicitly convey that the call is from a "debt collector."  Defendants argue, however, that "in all of the messages . . . the caller identifies himself either as 'Green Tree' or 'Kevin Smith,'" and that it is "undisputed that the plaintiffs knew that Green Tree was attempting to collect a debt and that Kevin Smith was a debt collector employed by Green Tree to collect the debt."  Defs.' Mem. L. Opp. 11-12.  Accordingly, Defendants contend that the messages "effectively communicated to the plaintiffs that they were from a debt collector."  *Id.* at 12.

Once again, Defendants' factual assertion, that the caller identifies himself as either "Green Tree" or "Kevin Smith" in every message, is demonstrably misleading.  The Court has identified three messages in which the caller is not identified at all.  *See* Krisber Decl., Ex. I ¶¶ 3, 22, 24.  Accordingly, even under Defendants' reading of the statute, Defendants would still be liable under § 1692e(11) for the three voicemail messages that failed to identify the caller.  *See Zimmerman*, 276 F.R.D. at 177 (noting that a "single violation of the FDCPA is sufficient to impose liability") (citation omitted).  The Court need not consider the merits of Defendants' argument regarding the proper interpretation of § 1692e(11), i.e., that simply identifying themselves as "Green Tree" or "Kevin Smith" satisfies the statute—though it would appear to be

29

specious on its face[22]—because at least three of the voicemails clearly violate the FDCPA by failing to identify that the call is from a debt collector *or* who the caller is and/or where he is calling from.  Accordingly, Plaintiffs are entitled to summary judgment on their FDCPA claim related to Defendants' voicemail messages.[23]

## V.   **Defendants' Motion for Partial Summary Judgment**

### a.   **Plaintiffs' TCPA Claim**

Defendants move for summary judgment on Plaintiffs' TCPA claim on the basis that "there is no evidence to demonstrate that there were any connected calls from an auto-dialer to the plaintiffs' cell phones" and that "the plaintiffs consented to receiving calls on their cell phones by using their cell phones to initiate contact with the defendants, thus falling under an exception to the TCPA."  Defs.' Mem. L. 1.

The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial prerecorded voice . . . to any telephone number assigned to a paging service, cellular telephone service, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call."  47 U.S.C. § 227(b)(1)(A)(iii).

At the pre-motion conference held on January 10, 2013, the Court denied Defendants' request for leave to file a motion for summary judgment based on counsel's failure to convince

---

[22] The Court notes that Defendants fail to cite *any* authority to support their argument that their voicemail messages satisfied § 1692e(11) by "*effectively* communicat[ing] to the plaintiffs that they were from a debt collector."  Defs.' Mem. L. Opp. 12 (emphasis added).  Section 1692e(11) clearly states that a debt collector violates the provision by "fail[ing] to disclose in subsequent communications that the communication is from a debt collector."

[23] In their opposition papers, Defendants discuss the merits of Plaintiffs' claim relating to Defendants' alleged communications with third parties about Plaintiffs' debt.  Defs.' Mem. L. Opp. 13.  However, because Plaintiffs do not move for summary judgment on this claim, Pls.' Mem. L. Reply 10, the Court does not address Defendants' arguments.

the Court that there existed no disputed issues of material fact such that summary disposition of the matter would be appropriate.[24]  *See* Jan. 25, 2013 Order (Doc. 55.)  Defendants subsequently moved for reconsideration of the Court's Order, which the Court granted.  *Id.*  Upon reviewing Defendants' submissions, however, Defendants have still utterly failed to establish that no disputed issues of fact exist regarding Plaintiffs' TCPA claim.

Defendants' contention that none of the calls to Plaintiffs' cellular phones were from an automatic dialer is patently meritless.  *Green Tree's own Rule 30(b)(6) witness* testified in no uncertain terms that Green Tree placed *at least* thirty-four calls to Plaintiffs' cellular phones using an auto dialer.  *See* Mauro Aff., Ex. M (30(b)(6) Depo. Tr.) at 11-12 ("Q. So there's 34 calls that were made with an auto dialer to the telephone number 845-536-9192, appearing in these notes, correct?  A. Yes, sir.  Q. And then there are two calls that you are suggesting the auto dialer attempted to call, but the calls didn't go through?  A. That's correct."); Ex. B (Verizon Wireless Depo. Tr.) at 4 (confirming that 845-536-9192 is one of Plaintiffs' cell phone numbers).  In an attempt to avoid liability under the TCPA, Defendants distinguish between those calls that were "connected" (i.e., were picked up by Plaintiffs), and those that were not answered or went to Plaintiffs' voicemail.  Defendants suggest that it is "irrelevant" that Green Tree made thirty-four calls to Plaintiffs' cell phones using an auto-dialer "when there is absolutely no evidence that any of those calls ever connected."  Defs.' Reply Mem. L. 2.  However, the TCPA clearly restricts the *making* of any call using an automatic telephone dialing system to a cellular phone, and does not distinguish between calls that are picked up and calls that go to voicemail.  47 U.S.C. § 227(b)(1)(A)(iii).  Accordingly, for purposes of Plaintiffs'

---

[24] Indeed, in response to direct questions by the Court as to whether certain facts that Defendants intended to rely upon were contested, e.g., the use of an automatic dialer, counsel for Defendants conceded that they were, in fact, contested.

TCPA claim, it is immaterial whether the Plaintiffs picked up all of Defendants' calls or whether several of the calls went unanswered.

Moreover, Defendants' argument that their TCPA violations should be excused on the theory that Plaintiffs did not incur any additional cost as a result of the thirty-four calls at issue fails as a matter of statutory construction.  Under the "rule of the last antecedent," which provides that, where no contrary intention appears, a limiting clause or phrase should be read as modifying only the noun or phrase that it immediately follows, the Court finds that the phrase "for which the called party is charged for the call" only modifies "any service."[25]  *See In re Enron Creditors Recovery Corp.*, 380 B.R. 307, 319, 321-22 (S.D.N.Y. 2008) (noting that the Supreme Court has often held that it is "quite sensible as a matter of grammar" to construe statutes in conformity with the rule of the last antecedent) (citation omitted).  As Plaintiffs point out, courts that have addressed this issue have routinely held that a plaintiff need not prove that he was charged for a cellular phone call to state a claim under the TCPA.  *See, e.g.*, *Lynn v. Monarch Recovery Mgmt., Inc.*, No. WDQ–11–2824, 2013 WL 3071334, at *7 n.37 (D. Md. June 17, 2013) (citing cases); *Manfred v. Bennett Law, PLLC*, No. 12 Civ. 61548 (PAS), 2012 WL 6102071, at *2 (S.D. Fla. Dec. 7, 2012) ("[T]he Court notes that the language of the statute makes it apparent that Plaintiff need not allege that he was charged for the call if he has alleged that the call was made to his cell phone."); *Gutierrez v. Barclays Grp.*, No. 10 Civ. 1012 (DMS) (BGS), 2011 WL 579238, at *5-*6 (S.D. Cal. Feb. 9, 2011) (holding that plaintiffs need not

---

[25] The Court also notes that Congress amended the TCPA in 1992 to provide that the Federal Communications Commission ("FCC") "may, by rule or order, exempt from the requirements of *paragraph 1(A)(iii)* of this subsection calls to a telephone number assigned to a cellular telephone service that are not charged to the called party."  *See* Pub. L. No. 102-556, 106 Stat. 4181, 4194-95 (Oct. 28, 1992), enacted as 47 U.S.C. § 227(b)(2)(C).  If uncharged calls were already exempted from the requirements of the TCPA, the later Congressional amendment would be wholly superfluous, as no FCC "rule or order" would be necessary to exempt such calls from the statute's purview.

show that they were charged for the calls or texts to their cell phones to prevail under the TCPA); *Lozano v. Twentieth Century Fox Film Corp.*, 702 F. Supp. 2d 999, 1009 (N.D. Ill. 2010) ("Due to the occurrence of two disjunctive prepositions in the relevant portion of § 227, the phrase 'for which the called party is charged for the call' only modifies 'any service.'") (citation omitted).[26]

With respect to Defendants' argument that Plaintiffs consented to the calls at issue, the Court notes that prior express consent is deemed to be granted "only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 02-278, 23 FCC Rcd. 559, 564-65 (2008) ("2008 TCPA Order").[27]   The FCC has noted, however, that if a caller's number is "captured" by a Caller ID without notice to the caller, "the caller cannot be considered to have given an invitation or permission to receive autodialer or prerecorded voice message calls." *Id.* at 564 n.34 (citing *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CC Docket No. 92-90, 7 FCC Rcd. 8752, 8769 (1992)).   Accordingly, Defendants' argument that Plaintiffs "consented" to the calls at issue by initiating calls to Defendants using their cell phones must fail.

Moreover, the Court notes that the evidence on which Defendants rely in support of their argument actually undercuts their position.   Specifically, Defendants cite to the deposition transcript of Mario Castro, in which he testified that he *did not* tell Defendants that they could call him on his cell phone and that he "believe[s]" Defendants obtained his cell phone number

---

[26] Plaintiffs have not cited to any court within this Circuit to have addressed this issue, and the Court is not aware of any.

[27] In enacting the TCPA, Congress explicitly granted the FCC authority to determine "by rule or order" the bounds of the Act.  47 U.S.C. § 227(b)(2).

33

when they "grabbed the number from the caller ID."  *See* Hansen Aff., Ex. K (Mario Castro Depo. Tr.) at 25.  This testimony *directly contradicts* Defendants' argument, as a reasonable reading of Mr. Castro's testimony demonstrates that Plaintiffs did *not* consent to Defendants' telephone calls.  Additionally, in support of their argument, Defendants contend that "plaintiffs made more outgoing calls to Green Tree than they received."  Defs.' Mem. L. 8.  However, Defendants' assertion is belied by the record in this case.  As Defendants admit, Plaintiffs only initiated *six calls* to Green Tree from their cell phones, whereas Defendants' Collection Comment List shows that Defendants made *several dozens of calls* to Plaintiffs' home and cell phones, and Defendants' own Rule 30(b)(6) witness testified that Green Tree placed *at least* thirty-four calls to Plaintiffs' cell phones.  *See* Mauro Aff., Ex. M (30(b)(6) Depo. Tr.) at 11-12, O; Defs.' 56.1 Stmt. ¶ 10.  Accordingly, the Court finds that material issues of fact exist with respect to Plaintiffs' TCPA claim, and Defendants' motion for partial summary judgment is therefore DENIED.[28]

### b.  Plaintiffs' Damages Claim

Defendants argue that because Plaintiffs did not provide authorizations to obtain their medical records, the Court should limit the proof they are permitted to offer at trial regarding their actual damages as a result of Defendants' FDCPA violations.  Actual damages are intended

---

[28] Defendants argue in the alternative that even if the Court does not dismiss Plaintiffs' TCPA claim, it is undisputed that such violation was not "willful" and that Plaintiffs should therefore be precluded from seeking treble damages at trial.  *See* 47 U.S.C. § 227(b)(3)(C).  Because the Court finds that issues of fact exist regarding the knowledge and/or willfulness of Defendants, Defendants' request for summary judgment on this issue is DENIED.  Although Defendants assert that one of Plaintiffs' cell phone numbers was mistakenly listed by Green Tree as a non-cell phone number, and that once the error was discovered, the listing was changed, Plaintiffs vehemently dispute this contention.  The only evidence Defendants have submitted in support of their contention that the calls at issue were mistakenly placed is the testimony of their Rule 30(b)(6) witness.  Defs.' 56.1 Stmt. ¶¶ 13-14.  Accordingly, a jury is entitled to assess the credibility of Defendants' witness at trial.  *See Jeffreys v. City of New York*, 426 F.3d 549, 553-54 (2d Cir. 2005) ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment.") (citations omitted).  Moreover, Plaintiffs have submitted the testimony of other consumers who experienced similar treatment by the Defendants.  Finally, that Defendants had a policy against "robo-calling" consumers does not suggest, as a matter of law, that they did not act "willfully" when they placed calls to Plaintiffs' cell phones using an automated dialer.

to "compensate a plaintiff for out of pocket expenses, personal humiliation, embarrassment, mental anguish, and/or emotional distress that results from defendant's failure to comply with the FDCPA." *Mira v. Maximum Recovery Solutions, Inc.*, No. 11 Civ. 1009 (ADS) (GRB), 2012 WL 4511623, at *3 (E.D.N.Y. Aug. 31, 2012) (Report & Recommendation) (quoting *Milton v. Rosicki, Rosicki & Assocs., P.C.*, No. 02 Civ. 3052 (NG), 2007 WL 2262893, at *3 (E.D.N.Y. Aug. 3, 2007)), *adopted* 2012 WL 4581590 (E.D.N.Y. Sept. 29, 2012).  Defendants point to no authority to suggest that Plaintiffs are *required* to submit medical records or testimony in order to allow a jury to determine their actual damages at trial.  The fact that Plaintiffs apparently did not seek or receive medical treatment may well factor into the jury's damages determination, *see Mira*, 2012 WL 4511623, at *3 (finding that plaintiff's request for $10,000 award in FDCPA case was excessive in light of the fact that "no evidence has been produced that Plaintiff sought or received medical treatment as a result of [the defendant's] contacts"), however, it does not preclude Plaintiffs from introducing their own testimony regarding the humiliation, embarrassment, mental anguish, and/or emotional distress they suffered as a result of Defendants' FDCPA violations.[29]

## VI.    Order to Show Cause as to Why the Court Should not Issue an Order for Sanctions Pursuant to Fed. R. Civ. P. 11

As detailed above, Defendants' submissions to the Court contain several factual assertions that are demonstrably wrong and clearly contradicted by the record in this case. Specifically, Defendants' submissions contain the following inaccurate contentions:

- Defendants blithely contend that their initial communication with Plaintiffs in connection with the collection of their debt was by letter dated September 21, 2009, Defs.' Mem. L. Opp. 5, notwithstanding the fact that Defendants *admit* that they sent a letter to Plaintiffs dated September 18, 2009, Defs.' Response to Pls.'

---

[29] Of course, the testimonial and documentary evidence both parties are permitted to offer at trial is governed by the Federal Rules of Civil Procedure and the Federal Rules of Evidence.

56.1 Stmt. ¶ 13, which explicitly references Plaintiffs' debt, states that it is "an attempt to collect a debt" and identifies Green Tree as a "debt collector."  Krisber Decl., Ex. E.

- Defendants argue that in all of the voicemail messages at issue, "the caller identifies himself either as 'Green Tree' or 'Kevin Smith.'"  Defs.' Mem. L. Opp. 11.  However, Defendants' contention is demonstrably false, as the Court identified *three* messages in which the caller is not identified as either "Green Tree" or "Kevin Smith" in the transcription of Defendants' voice mail messages submitted by Plaintiffs, the authenticity or accuracy of which Defendants do not contest.

- In their moving papers, Defendants assert that Plaintiffs "received" only four calls on their cell phones from Green Tree and that none of those four calls were made using an automatic dialing system.  Defs.' Mem. L. 3; Defs.' 56.1 Stmt. ¶¶ 8-9.  Defendants fail to explain, however, that these four calls refer only to "billable calls," and omit from their submissions the fact that Defendants placed at least thirty-four calls to Plaintiffs' cell phones using an auto-dialer that were either not answered or that went to Plaintiffs' voicemail.  Moreover, Defendants argue that Plaintiffs "made more outgoing calls to Green Tree than they received," Defs.' Mem. L. 8, notwithstanding the fact that Defendants' own Collection Comment List shows that Defendants made *several dozens of calls* to Plaintiffs, whereas, as Defendants *admit*, Plaintiffs only initiated *six* calls to Green Tree.  *See* Hansen Aff., Ex. O; Defs.' 56.1 Stmt. ¶ 10.

Each of these factual assertions are directly relevant and material to the issues raised by the parties' motions.  It is therefore difficult to see how these various inaccurate and/or misleading assertions could have been made inadvertently.  Accordingly, it is hereby ORDERED that Defendants, within thirty days of the date of this Order—that is, on or before September 13, 2013—show cause in writing as to why an Order for sanctions pursuant to Fed. R. Civ. P. 11(b)(3) and (c) should not be issued.

## VII.    Conclusion

For the reasons set forth above, Plaintiffs' motion for summary judgment is GRANTED in part and DENIED in part, and Defendants' motion for summary judgment is DENIED.  Specifically, Plaintiffs are granted summary judgment on their (i) §§ 1692g and 1692e claims

related to the September 18, 2009 letter; (ii) § 1692e claim related to the Privacy Notice; and (iii) § 1692e claim related to Defendants' voicemail messages.  Accordingly, liability against Defendants on several of Plaintiffs' FDCPA claims is established, and damages remain for determination.  The Clerk of the Court is respectfully directed to terminate the motions.  Docs. 48, 57.

It is further ORDERED that on or before September 13, 2013, Defendants show cause in writing as to why an Order for sanctions pursuant to Fed. R. Civ. P. 11(b)(3) and (c) should not be issued.

The parties are instructed to file their joint pre-trial order no later than September 13, 2013 and to appear for a pre-trial conference on September 20, 2013 at 11:00 am, at which a final pretrial conference date and trial date will be set.

It is SO ORDERED.

Dated:      August 14, 2013
            White Plains, New York

_____
Edgardo Ramos, U.S.D.J.